Commonwealth *v.* McCoy, Appellant.

Argued December 13, 1966.   Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Abraham J. Brem Levy,* for appellant.

*Robert H. Finkel,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAULDING, J., March 23, 1967:

On July 19, 1963, shortly after 2:00 a.m., appellant and a companion were arrested for burglary of a telephone booth situated at 16th and Clearfield Streets, Philadelphia, Pennsylvania.

David Adams, who lived near the booth, testified he observed two men enter it and break the ceiling light. A third man walked back and forth in front of the booth. Adams telephoned the police and two officers were on the scene within forty five seconds. He testified that as the police drove up, the third man tapped on the booth door, said "make it", and ran.

One of the officers testified he saw appellant and another man inside the booth and a third standing on the sidewalk. They attempted to flee but the two who had been inside were immediately apprehended. The police found a screwdriver on a ledge in the booth and observed considerable damage to the phone instrument. A Bell Telephone Company representative testified he examined the telephone later the same day and found evidence of an attempt to pry open the instrument. On August 19, 1963, appellant was convicted of burglary and conspiracy.

Four questions are raised on appeal.

## I

Appellant contends that a telephone booth is not a "building" within the meaning of the Act of June 24, 1939, P. L. 872, §901, 18 P.S. 4901, which provides: "Whoever, at any time, wilfully and maliciously, enters any building, with intent to commit any felony therein, is guilty of burglary . . . ." According to appellant, the simultaneous enactment of §4903 dealing with any "car, caboose, locomotive, motor vehicle, trailer, boat, aircraft, or any other vehicle" is an indication of legislative intent that §4901 should apply only to structures

commonly recognized as buildings by the general public. Section 4903 is limited to vehicles which, because of their nonstationary character, could not be considered buildings. It does not include stationary structures and has no bearing on the scope of §4901.[1]

The historical development of burglary shows a considerable expansion in the kinds of structures which would qualify as the subject of the crime.[2] At common law, burglary was the night time breaking and entering of the dwelling house of another with intent to commit a felony therein.[3] Sections 135 and 136 of the Act of 1860, March 31, P. L. 382, were significantly broader and included numerous public and private structures.[4] Section 4901 substituted the single category of "building". This development and the similar expansion of burglary statutes in other jurisdictions, indicates an increase in legislative concern for the protection of all property within a structure, even though not a dwelling.[5]

Although a question of first impression in Pennsylvania, other jurisdictions with similar statutes have sustained convictions for burglary of a telephone booth. Florida courts have held that a telephone booth

---

[1] Section 4901-1 titled "Unlawful entry" provides for illegal entry of "a building" in "a manner not amounting to burglary". Section 4902 applies to "Burglary with explosives" and §4904 to "Possession of burglary tools".

[2] Wright, Statutory Burglary—The Magic of Four Walls and a Roof, 100 U. Pa. L. Rev. 411 (1951); Note, A Rationale of the Law of Burglary, 51 Colum. L. Rev. 1009 (1951).

[3] Perkins on Criminal Law 149 (1957).

[4] Section 135 referred to "the state capitol, or other public building belonging to the commonwealth, or to any city or county thereof, or to any body corporate, society or association, or into any church, meeting house or dwelling house, or outhouse parcel of said dwelling . . . ." and §136 to "any dwelling house, shop, warehouse, store, mill, barn, stable, outhouse or other building . . . ."

[5] Wright, supra note 2, at 424-440.

is a "building" if outdoors but is not if located indoors. *Perry v. State,* 174 So. 2d 55 (Fla. App. 1965); *Dawalt v. State,* 156 So. 2d 769 (Fla. App. 1963). In *Sanchez v. People,* 142 Colo. 58, 349 P. 2d 561 (1960), the court held an outdoor telephone booth was a "building" subject to burglary and stated: ". . . all stationary structures within Colorado, no matter of what substance they may be constructed, are within the term building, so long as they are designed for use in the position in which they are fixed." In *People v. Miller,* 95 Cal. App. 2d 631, 213 P. 2d 534 (1950), and *People v. Goins,* 66 Ill. App. 2d 251, 213 N.E. 53 (1966), outdoor booths were held to be "buildings" under burglary statutes. We are not aware of any contrary decisions on outdoor phone booths.

We hold that the outdoor telephone booth in this case is a "building" within the meaning of §4901.[6]

## II

Appellant alleges the bill of indictment is too vague and fails to identify the premises with sufficient certainty to prepare a defense and provide protection from subsequent prosecution for the same offense.[7]

He relies on *State v. Smith,* 267 N.C. 755, 148 S.E. 2d 844 (1966), which held an indictment charging breaking and entering "a certain building occupied by one Chatham County Board of Education, a Government corporation" was fatally defective. The Court

---

[6] Had the telephone merely been attached to a wall, there would probably be no burglary. Wright, supra note 2, at 442.

[7] The bill charged: "That on or about July 19, 1963, in Philadelphia County, Edward McCoy . . . wilfully, maliciously, feloniously and burglariously [sic] entered the building at 16th and Clearfield Streets of a certain body corporate named and called the Bell Telephone Company with intent to commit a felony therein, to wit: larceny."

noted that "under the general description of ownership in the bill, it could have as well been any other school building or other property owned by the Chatham County Board of Education."

In contrast, the instant indictment specifically describes the building as owned by the Bell Telephone Company and located at 16th and Clearfield Streets. There is no evidence that appellant was unable to prepare his defense because of vagueness in the indictment.

In passing upon the sufficiency of criminal proceedings, courts look more to substantial justice than to technicalities. *Commonwealth v. Wheeler*, 200 Pa. Superior Ct. 284, 189 A. 2d 291 (1963) ; *Commonwealth v. Buford*, 179 Pa. Superior Ct. 312, 116 A. 2d 759 (1955).

The indictment adequately informed appellant of the charge against him.

## III

Appellant alleges the Commonwealth's evidence was insufficient to support a conspiracy conviction.[8]

In deciding this question, the Commonwealth must be given the benefit of all favorable testimony and reasonable inferences. *Commonwealth v. Yobbagy*, 410 Pa. 172, 188 A. 2d 750 (1963). In the leading case of *Commonwealth v. Neff*, 407 Pa. 1, 6, 179 A. 2d 630, 631-2 (1962), the Court said: " 'The elements of conspiracy to do an unlawful act are a combination of two or more persons, with criminal intent or corrupt mo-

---

[8] Section 302 of the Act of June 24, 1939, P. L. 872, §302, 18 P.S. §4302, in part provides: "Any two or more persons who falsely and maliciously conspire and agree to cheat and defraud any person of his moneys, goods, chattels, or other property, or do any other dishonest, malicious, or unlawful act to the prejudice of another, are guilty of conspiracy, . . . ."

tive, to do a criminal or unlawful act, . . . Com. v. Gaines, 167 Pa. Superior Ct. 485, 75 A. 2d 617. The offense of conspiracy is complete the moment the parties agree to do an unlawful thing: Com. v. Ricci, 177 Pa. Superior Ct. 556, 112 A. 2d 656. No explicit, formal agreement need be shown in proving a criminal conspiracy: Com. v. Dunie, 172 Pa. Superior Ct. 444, 94 A. 2d 166. The heart of every conspiracy is a common understanding, no matter how it comes into being. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities: Com. v. Strantz, 328 Pa. 33, 195 A. 75. A conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: Com. v. Rosen, 141 Pa. Superior Ct. 272, 14 A. 2d 833.' "

In *Commonwealth v. Yobbagy,* supra, the Court held there was insufficient evidence to sustain the defendant's conviction of conspiracy. It noted that mere participation in the object of the conspiracy does not necessarily prove the participant guilty of conspiracy and stressed the Commonwealth's burden of proving an unlawful agreement and knowledgeable participation. There was no evidence of overt conduct by the defendant which linked him with the extortion committed by his companion. The defendant was not present when the payoff was discussed or when the money was paid, nor was there evidence that he received any of the stolen money.

In the instant case, there is eyewitness testimony of the joint presence of appellant and his companions in and around the telephone booth, their burglary of the booth, and their attempt to escape when the police

arrived. Prior agreement may also be inferred from the fact that the two apprehended had empty paper bags in their possession.

The conspiracy conviction stands.

## IV

Finally, appellant alleges inadequate representation by court appointed counsel. The concept of effective representation has been strictly construed. To be inadequate, representation must be so lacking in competence as to constitute a mockery of justice. *Commonwealth ex rel. Mullenaux v. Myers*, 421 Pa. 61, 217 A. 2d 730 (1966); *Commonwealth ex rel. Crosby v. Rundle*, 415 Pa. 81, 202 A. 2d 299 (1964).

Appellant argues his counsel's failure to file motions to quash the indictment or for a bill of particulars illustrates lack of effective representation. Having found the indictment sufficient, we do not agree. Our review of the record reveals appellant was fairly and effectively represented.

Decision affirmed.