Commonwealth, Appellant, *v.* Mayer.

182

Argued September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Gregory V. Smith*, Assistant District Attorney, with

him *Allen E. Ertel,* District Attorney, for Commonwealth, appellant.

*Kenneth D. Brown,* Assistant Public Defender, and *Peter T. Campana,* Public Defender, submitted a brief for appellee.

OPINION BY VAN DER VOORT, J., April 22, 1976:

On May 27, 1974, several persons broke into a mobile trailer home being stored on a lot in Montoursville, and removed various items from the trailer. The crime was spotted by a private citizen, Walter Wert, who notified the police. A call went out over the Pennsylvania State Police radio alerting police in the area to stop a green van with a specified license number in connection with a theft from mobile homes. This bulletin was relayed by the Williamsport police radio to local police forces in the vicinity. About fifteen minutes after receiving the bulletin, Officer Floyd Reed and his partner (Williamsport officers) stopped the van in nearby Williamsport. The Montoursville Police Chief, Harold Gottschall, was then notified, and he and another officer arrived in Williamsport a short time later, arrested appellant and another occupant of the van and took them to City Hall. There the van was searched pursuant to a lawful search warrant, and property stolen from the house trailer was discovered. Appellant was charged with the theft of items of the approximate value of two hundred twenty-nine ($229.00) dollars. On December 5, 1974, appellant filed a motion to suppress evidence obtained in connection with his arrest, which motion was granted by the lower court on January 16, 1975. The Commonwealth appealed the grant of this suppression motion,[1] arguing that the lower court erred in finding

---

1. It is clear that our Court has jurisdiction to hear this appeal: "when the District Attorney from one of the counties of this Commonwealth directs an appeal from the suppression of evidence, we must accept such an appeal as the Commonwealth's good faith

that the arrest was for a misdemeanor not committed in the presence of the arresting officer. We find that the arrest was made by the police with probable cause to believe that a felony had just been committed and that appellant was one of the perpetrators of the felony.

In deciding whether the police had probable cause to make the arrest, it is first necessary to determine whether or not a finished but uninhabited house trailer is a "building or occupied structure" within the meaning of §3502 of the Crimes Code,[2] since only buildings and occupied structures can be the subject of the felonies of burglary or criminal trespass. The mobile trailer home in question was a forty or fifty foot house trailer. It was adapted for overnight accomodation of persons[3] and was

---

certification that the case will be terminated or substantially prejudiced by such an order, and determine only if the suppression was proper." *Commonwealth v. Deren*, 233 Pa. Superior Ct. 373, 377-78, 337 A.2d 600, 602 (1975).

2. §3502 states that "[a] person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa. C.S. §3502(a).

§3503 states: "(a) Buildings and occupied structures. —

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or gains entrance by subterfuge or surreptitiously remains in any building or occupied structure, or separately secured or occupied portion thereof." 18 Pa.C.S. §3503(a)(1).

The definition section of that chapter defines "occupied structure" as "[a]ny structure, vehicle or place adapted for overnight accomodation of persons, or for carrying on business therein, whether or not a person is actually present." 18 Pa. C.S. §3501.

3. Chief Gottschall testified as follows:
"Q What type of trailers are these?
A Probably forty-foot mobile home trailers, forty or fifty-foot trailers.
Q Would they be adapted for living accomodations?
A They are living accommodations.
Q And did you know that on May 27, 1975, when you received the report, did you know they had living accommodations (sic)?
A I did."

being stored on a lot with similar trailers. Appellee would have us find that the trailer could not have been the subject of a burglary or criminal trespass since it was not currently being used for human habitation. We disagree. In *Commonwealth v. McCoy*, 209 Pa. Superior Ct. 399, 401, 228 A.2d 43 (1967), our Court held that an outdoor telephone booth was a "building" within the meaning of the Act of June 24, 1939, P.L. 872, §901, 18 P.S. §4901. We recognized in *McCoy* that the historical development of the crime of burglary reflected a concern for the protection of property within a structure, with a consequent expansion in the types of structures which would qualify as subjects of that crime. We do not believe that the enactment of the new Crimes Code reflects a lessening in the legislative concern for property. The legislature undoubtedly intended a house trailer, even though uninhabited, to be a "building or occupied structure" within the meaning of §3502 and §3503. Having so determined, we now turn to the question of whether the police had probable cause to believe that appellant was the perpetrator of a felony.

On May 27, 1974, Walter Wert, a private citizen, saw some people in the process of removing items from some mobile trailer homes and putting them into a green van-type automobile. He got the license number of the van and reported the information which he had to the State Police who in turn issued a radio bulletin alerting other police to stop a green van with a specified license number "in regards to a theft or a burglary or something in Montoursville area of some trailers." The State Police bulletin was broadcast by local police units. Officer Reed and a fellow officer of nearby Williamsport police spotted the van in question within approximately 15 minutes after receiving the radio message and detained the van and its two occupants until Chief Gottschall and another officer arrived from Montoursville.

The instant case is similar to that of *Commonwealth v. Jones*, 233 Pa. Superior Ct. 461, 335 A.2d 789 (1975).

In *Jones,* our Court found probable cause for an arrest without a warrant where the police officers relied upon a police radio bulletin which indicated that two black males driving a red automobile with a black top, license number 866662 or 866226, were wanted in connection with the crime. The officers stopped a maroon-bottomed black-topped automobile bearing the license number 866226 about six blocks from the scene of the robbery and arrested the driver and the other occupant of the car. A search of the automobile disclosed a gun which was later linked to a robbery. Similar to the situation in *Jones,* the information available to the police in the instant case consisted essentially of a description of the motor vehicle (a green van), together with the name of the owner and the vehicle's registration (license) number, which was used in the commission of a crime. This information, transmitted by police radio, was relied upon by the police officers effecting the arrest. The arrest was made within fifteen to thirty minutes after the commission of the crime and within approximately six miles of the site of the crime.

Both police officers Gottschall and Reed testified at the suppression hearing that they received information over the police radio that persons traveling in a green van with a certain license number were wanted for stealing undetermined items from mobile homes in Montoursville. Officer Reed testified as to the radio message:

"... that this was in regards to a theft or burglary or something in Montoursville area of some trailers,"

and as to the reason for stopping the van:

"At the time we stopped them, we thought it was probably theft or breaking into the trailers of some kind."

Neither officer testified expressly that he believed the appellant had committed a burglary or a felony, however, both Officer Gottschall and Officer Reed did indicate that they were in possession of information of

criminal activity which amounted to the felony of either burglary[4] or criminal trespass.[5] That appellant was charged with, tried and convicted of theft only, does not change the fact that police officers had information from which they could reasonably have believed that a felony had been committed and that the appellant was one of the perpetrators of the crime, giving them probable cause to arrest appellant. Why appellant was charged with theft instead of burglary does not appear in the record and we are not called upon to speculate on the reason. We therefore find that there was probable cause for the stopping, detaining and arresting of the appellant.

The order of the lower court is reversed and the case is remanded for further proceedings.

JACOBS and HOFFMAN, JJ., concur in the result.

---

4. 18 Pa.C.S. §3501, added by Act of December 6, 1972 (P.L. 1482, No. 334), §1.

5. 18 Pa.C.S. §3503, added by Act of December 6, 1972 (P.L. 1482, No. 334), §1.

CONCURRING OPINION BY SPAETH, J.:

The reason for suppressing evidence is to deter improper police conduct. *Mapp v. Ohio*, 367 U.S. 643 (1961). Thus, every police officer is required to know that he cannot search without probable cause. If he nevertheless searches on mere suspicion, the court will ignore his argument that the result of the search justified the suspicion. *Ker v. California*, 374 U.S. 23, 40, n. 12 (1963); *United States v. Di Re*, 332 U.S. 581, 595 (1948); *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971). To accept the argument would encourage another officer to do what he knew he should not do, in the hope that his illegal conduct would likewise be excused by its result.[1]

1. For discussion of the basis of the exclusionary rule, *see* Monaghan, The Supreme Court, 1974 Term — Foreword: Constitutional Common Law, 89 Harv. L. Rev. 1, 3-10 (1975).

The majority upholds the arrest because the police "could reasonably have believed" that a felony — burglary — had been committed. The point, however, is not what the police could have believed, but what they did believe. If what they did believe was that only a misdemeanor had been committed, they must, or should, have known that they had no right to make a warrantless arrest. *Commonwealth v. Reeves*, 223 Pa. Superior Ct. 51, 297 A.2d 142 (1972). We should not reward such conduct, and encourage it in others, by retroactively finding a justification for it. *Cf.*, *Henry v. United States*, 361 U.S. 98 (1959); *Commonwealth v. Jeffries*, 454 Pa. 320, 324, n. 6, 311 A.2d 914, 917, n. 6 (1973).

In the present case, what the police did believe was that a theft — not a burglary — had been committed. It is true that an officer of the Williamsport police, who made the initial stop, testified that "[t]here was something like I said, about a burglary or theft or something, concerning something with trailers in the Montoursville area." (N.T. 7.) However, when the hearing judge asked the Chief of the Montoursville police "[W]hat offense did you believe had been committed?", the Chief replied, "Larceny from the mobile houses, theft from the mobile homes." (N.T. 19.) Furthermore, the sergeant of the Montoursville police who signed the criminal complaint accused appellant of "THEFT."

At this point, the case sails into rather deep waters. "Theft" is "a felony of the third degree if the amount involved exceeds $2000.00" or if the property stolen is of a certain sort, such as a firearm or automobile, or if, in a case of receiving stolen property, the receiver is in the business of buying or selling stolen property. All other "thefts" are misdemeanors, either of the first, second, or third degree. Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1, eff. June 6, 1973, 18 Pa.C.S. §3903. Accordingly: If the police believed they were arresting appellant for a felony theft, they did not need a warrant; but if they believed they were arresting for a mis-

demeanor theft, they did need a warrant. The difficulty is that here what the police believed was that the theft might be either a felony or a misdemeanor — which it was they could not be sure.

It is true that there is no express testimony that this was what the police believed. However, the record is plain enough. The radio message was "that there was a van on Charles Street, removing items from a mobile homes [*sic*]" (N.T. 13). The message did not describe the number or sort of items. The recipient was left to wonder whether the items were of considerable or small value; one interpretation of the message was as reasonable as the other. Thus, the question presented by this case is this: When an officer cannot tell whether a felony or a misdemeanor has been committed, does he need an arrest warrant?[2]

I do not know of any case that answers this question. It seems to me, however, that it may be answered by drawing an analogy with the law of warrantless searches.

Generally speaking, warrantless searches are not to be encouraged. "It is well settled ... that a search conducted without a warrant issued upon probable cause is '*per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.' " *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). Similarly, warrantless arrests should not be encouraged. If, therefore, an officer does not know whether a felony or misdemeanor has been committed,

---

2. For theft arrests occuring after October 17, 1974, this issue will no longer arise. On that date, Section 3904 was added to the Theft chapter of the Crimes Code. The section provides:

"A law enforcement officer shall have the same right of arrest without a warrant for any grade of theft as exists or may hereafter exist in the case of the commission of a felony." Act of Dec. 6, 1972, P.L. 1482, No. 334, §3904, added Oct. 17, 1974, P.L. 749, No. 251, §1.

Here the arrest was on May 27, 1974.

he should, generally speaking, assume that the offense is a misdemeanor, and get a warrant.

This rule, however, cannot be more than general; it must be subject to some exception, just as is the rule regarding warrantless searches. The exceptions to the rule regarding warrantless searches have recently been summarized by Judge HOFFMAN in his dissenting opinion in *Commonwealth v. Cubler*, 236 Pa. Superior Ct. 614, 621, 346 A.2d 814, 819-20 (1975). As there observed, the rationale of all of the exceptions is that certain circumstances will be recognized as sufficiently "exigent" to excuse the officer from the requirement that he get a warrant. Applying this reasoning by analogy to the present case, it seems to me that the officers who arrested appellant were not required to get a warrant. Although they did not know whether the theft was a felony or a misdemeanor, they did have reason to believe that the theft might be a felony, that the items stolen were in the van, and that if they did not make the arrest at once, the van would be driven away and the items would become unrecoverable. Together these circumstances were sufficiently exigent to excuse the general requirement of a warrant.

I therefore agree that the order of the lower court should be reversed and the case remanded for further proceedings.