372 A.2d 473

**COMMONWEALTH of Pennsylvania**

v.

**Adam CUNNINGHAM, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1976.

Decided March 31, 1977.

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

Stewart J. Greenleaf, Assistant District Attorney, Ross Weiss, First Assistant District Attorney, and William T. Nicholas, District Attorney, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

The appellant contends, *inter alia,* that his right to a speedy trial was violated since he was not brought to trial within 180 days from the filing of the criminal complaint as required by Pa.R.Crim.P. 1100(a)(1). We agree with this contention, reverse the judgment of sentence, and order the appellant discharged.

The criminal complaint involved herein was filed on August 6, 1974. The case was first listed for trial on January 15, 1975, within the 180 days prescribed by the applicable rule, but appellant did not appear. The dissent, citing Pa.R.Crim.P. 1100(b) (p. 311), finds that trial commenced on that date and that all time elapsed thereafter is immaterial under the Rule. We refute this finding. The comment to Rule 1100 clearly states the intention of the Rule in respect to the commencement of trial:

"A trial commences when the trial judge determines that the parties are present and directs them to proceed to voir dire . . . or to some other such first step in the trial."

We do accept, however, that the evidence therefore establishes the unavailability of appellant as of January 15, 1975, and as such, commences a period of unavailability pursuant to Pa.R.Crim.P. 1100(d)(1).

The crucial question then becomes how many days are thus excludable. This in turn depends upon a record determination of the availability of appellant subsequent to the trial's first listing on January 15, 1975.

Appellant's Motion to Dismiss, filed September 3, 1975, and hence properly and timely filed pursuant to Pa.R.

Crim.P. 1100(f) alleges that Montgomery County, through its Sheriff's Office, filed a detainer against appellant at the Holmesburg Prison in Philadelphia on February 5, 1975. Although it is true appellant was incarcerated under one of the various aliases used by him, it is also apparent that at least the Sheriff of Montgomery County on that date had located the appellant. The dissent's discussion of the time period from February 5, 1975 to the actual commencement of the trial on September 4, 1975 (pp. 311 and 312) is therefore not applicable.

Although we can find no testimony by appellant offered on the Motion to Dismiss, it was apparently conceded by the district attorney at hearing (N.T. 14) that such a detainer was in fact filed on February 5, 1975, but that the district attorney's office was not advised that the Sheriff had located appellant. The Commonwealth also admits this point in its brief, where it explains:

"Accordingly, a bench warrant was issued which was the basis for lodging a detainer against him at the Holmesburg Prison in Philadelphia, *where he was located by Montgomery County authorities on February 5, 1975* (Commonwealth's Brief p. 2)" (Emphasis added)

██ Under the record and by the Commonwealth's admission, it is evident that the appellant was available for trial after February 5, 1975. Therefore, under Pa.R.Crim.P. 1100(d)(1), the appellant was unavailable only from January 15, 1975, until February 5, 1975, a period of 22 days.[1] Pursuant to Pa.R.Crim.P. 1100, assuming this computation, trial should have commenced on or before February 25, 1975. In fact it commenced on September 4, 1975, a period of 212 days after the filing of the detainer, 187 days after the expiration time of Rule 1100, and 389 days after the filing of the criminal complaint.

1. In its brief, the Commonwealth, interestingly, would even shorten this period as only running from January 15, 1975, to January 21, 1975, the date when appellant became a prisoner in Philadelphia, thus concluding the 180 day period under Rule 1100 ended on February 8, 1975 (Brief p. 6).

We would end this opinion at this point but for a curious turn taken in this appeal. The lower court (p. 307) clearly based its refusal of the appellant's Motion to Dismiss upon Pa.R.Crim.P. 1100. In addition, at the time of dismissal, the lower court specifically based the denial on the finding that appellant was unavailable. (N.T. 15) At no point in the lower court's opinion can mention be found that Pa.R. Crim.P. 1100 is inapplicable by reason of the Act of June 28, 1957, P.L. 428, Sec. 1 (19 P.S. § 881). This argument first appears in the Commonwealth's Brief before this Court:

"The Trial Court properly denied defendant's motion to dismiss under Rule 1100(f), because it has no application to the facts of the case." (Commonwealth's Brief p. 4)

"In fact, the Commonwealth does not rely at all on Rule 1100." (Commonwealth's Brief p. 4)

Rule 1100 was the sole argument presented by the Commonwealth in the lower court and was the sole basis of the lower court's denial of appellant's motion.

We are not prepared, however, to hold that the Commonwealth's present argument is not properly before us. On the one hand it is clear that had appellant shifted the basis of his motion to dismiss from the Rule in the lower court to the statute on this appeal we would have applied the doctrine of waiver. On the other hand we, as an appellate court, may independently arrive at a different ground than that advanced on appeal in affirming the lower court. This principle that an appellate court may affirm if any ground for affirmance exists has often been announced. *Prynn Estate*, 455 Pa. 192, 315 A.2d 265 (1974); *Concord Township Appeal*, 439 Pa. 466, 268 A.2d 765 (1970). We therefore accept the Commonwealth's argument, since we independently could adopt it as a basis for affirming.

It is clear that Pa.R.Crim.P. 1100 does not suspend the Act of June 28, 1957, P.L. 428, § 1 (19 P.S. § 881) (the so called "180-day rule," which deals with the disposition of charges outstanding against a prisoner, upon his request for trial). It is not, however, clear just how the statute was to be interrelated to Rule 1100.

We believe that the Pennsylvania Supreme Court, by its failure to suspend this statute, could only have intended it remain effective to the extent that its provisions did not conflict with those of the Rule or that a defendant was, under Pa.R.Crim.P. 1100(a)(1), to be given a viable method of securing trial in less than 270 days. The second of these alternatives has now, for all practical purposes, lost its usefulness since presumably the cases where a complaint is filed after June 30, 1973, but before July 1, 1974, have crossed the bar of appellate procedure and sailed into history.

▪ There remains, therefore, only the purpose of survival of the statute unless the Rule indicates a contrary result. This in effect limits the application of the statute *only* to those situations where the whereabouts of the defendant is unknown and the Commonwealth, by the exercise of due diligence, is unable to locate him. The statute is preserved in those limited circumstances for the purpose of imposing an obligation upon the defendant to inform the seeking authorities of his whereabouts. Absent the defendant so informing under those circumstances *no* time limit is brought to bear on the right to speedy trial.

Viewed in this light the vitality of the Rule is observed and preserved. To adopt the view urged by the Commonwealth does violence to the concept of speedy trial first announced in *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972) and firmly adopted in Pa.R.Crim.P. 1100.

This is a matter of first impression and the lower court was never given the opportunity to comment upon it or research it. The Commonwealth cites no authority for the proposition advanced by it, relying solely on a public policy argument that we cannot accept. Since the statute was adopted prior to the concept of speedy trial in this Commonwealth as it presently exists, and indeed prior to any of the landmark United States Supreme Court cases of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972);

*Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), we are satisfied that the legislature in the adoption of this statute did not intend, nor contemplate, any inference with the current conceptions of speedy trial. To the contrary, we believe that in 1957 the legislature intended the statute to protect more adequately the right to a speedy trial by giving a defendant a specific method by which to assert that right, while at the same time, adequately protecting the Commonwealth by assuring that a defendant, by concealment of his whereabouts, could not assert a speedy trial right and avoid trial.

The statute then has no application to the appeal now before us. It is now conceded both on the record and by brief, that Montgomery County filed its detainer against appellant on February 5, 1975. His whereabouts were known. The Rule provides the Commonwealth with the right to petition for an extension of time. Whether or not this could properly have been granted need not concern us, since no such request was ever made. The time for trial expired, whether from a breakdown in communications between the office of sheriff and district attorney in Montgomery County or simply because the district attorney's left hand didn't know what his right hand was doing or a combination of these reasons.[2] It matters not to this interpretation, and although we are sure there will be further complaint concerning the discharge of "convicted" criminals on an "outrageous"[3] technicality it seems clear that Pa.R. Crim.P. 1100 dictates the reversal of the lower court's denial

---

**2.** The organizational prowess of the Montgomery County prosecutorial forces was also displayed before this court in *Commonwealth v. Gerald Woodson,* (filed (J.1726/75). In *Woodson,* the Commonwealth filed a petition for an extension of time pursuant to Rule 1100 on February 3, 1975, alleging that appellant, Woodson, was "at large" and that a bench warrant had been issued for his arrest. In fact, on February 3, the appellant was in the Montgomery County Prison, where he had been since August 27, 1974, when he had been apprehended on the bench warrant.

of the appellant's motion to dismiss and that appellant be discharged.

The judgment of sentence is reversed and the appellant is ordered discharged.

VAN der VOORT, J., files a dissenting opinion in which WATKINS, President Judge, and CERCONE, J., join.

VAN der VOORT, Judge, dissenting:

The appellant, Adam Cunningham, following non-jury trial, was convicted of retail theft and criminal conspiracy. After post-trial motions were denied, and sentence imposed, appellant filed the instant direct appeal to our Court raising two claims of alleged error: (1) that the lower court erred in denying appellant's motion to dismiss for violation of Rule 1100 of the Pennsylvania Rules of Criminal Procedure, and (2) that the lower court erred in refusing to suppress evidence obtained as a result of an illegal arrest. I find neither of appellant's claims to be meritorious and would affirm the judgment of sentence.

The record shows that during the afternoon of August 6, 1974, a store detective for a department store in Willow Grove, Montgomery County, Pennsylvania, observed appellant and one Delores Odom together in the women's sportswear department from a distance of approximately ten to fifteen feet. The detective saw appellant pick up approximately ten pairs of pants and put them over his arm and then, with Miss Odom, leave the store without attempting to pay the cashier for the items of clothing. The detective followed the two and saw them get into a black over yellow Dodge automobile in which a male driver was waiting. As the trio proceeded south on York Road, the detective wrote down the license plate number and called the Upper Moreland Township police giving them the description of the

---

**3.** I refer here to previous comment on other Pa.R.Crim.P. 1100 interpretations.

vehicle and the three occupants, the license plate number, and advised them of the direction in which the vehicle was traveling. The Upper Moreland police then broadcast the above information over the police radio and notified surrounding areas as well, since the vehicle had last been seen heading south on York Road toward Abington Township.

Within less then five minutes, an officer of the Upper Moreland Township Police Department, was directed over the radio to proceed to the department store to speak with the store detective. While en route, a few minutes later, the Upper Moreland officer was informed over the radio that the car had been stopped by Abington Township police officers. He picked up the store detective at the store and they proceeded to the intersection at Fairway, Harte and York Roads, approximately two miles away. As they arrived on the scene, an officer of the Abington Township Police Department was removing the three occupants from the vehicle. The store detective identified the three people as the perpetrators of the theft. The clothing, found in the vehicle was identified as being that which appellant had taken from the store. The clothing was lying in plain view on the back seat and on the floor in the front of the vehicle. Some of the items of clothing still had the department store price tags attached to them. The clothing was removed from the vehicle and placed in the Upper Moreland patrol car, and the vehicle was moved to the side of the road and secured. At the request of the Upper Moreland officer the three subjects were placed under arrest and put into the Abington Township patrol car, whereupon they were transported back to Upper Moreland Police Department for processing. At trial, the Commonwealth proved all of the above, as well as offering positive identification of appellant by the officers and the store detective.

In his first claim, appellant contends that he was not brought to trial within the prescribed time period of 180 days following the filing of the criminal complaint as required by Rule 1100 of the Pennsylvania Rules of Criminal Procedure. The record indicates that while the criminal

complaint was filed on August 6, 1974 and trial was held on September 4, 1975, the circumstances occurring between those dates compel the finding that Rule 1100 was not violated in this case. Records show that the appellant's trial was originally scheduled for January 15, 1975 and was *called for trial* on that date, well within the 180 days required by the Rule. Section (b) of Rule 1100 provides: "For the purpose of this Rule, trial shall be deemed to commence on the date the trial judge calls the case to trial". Unfortunately, the appellant did not appear for his trial that day.

The appellant offered testimony that he had been found guilty and sentenced in Philadelphia County sometime in November, 1974 on charges of disorderly conduct. He was sentenced to 30 days in custody. As a result of such conviction, he was also found in violation of probation and as a result, had an 11½ to 23 month sentence added to the disorderly conduct sentence. During all such proceedings and during the time he was serving such sentences in the Holmesburg Prison in Philadelphia, appellant was listed and known by the name Frederick Duffan.[1] During the time of such imprisonment, appellant never contacted the court or defense counsel to indicate his whereabouts or unavailability for trial. He also never exercised his right to seek speedy trial of the charges against him, while in a term of imprisonment, pursuant to 19 P.S. § 881, which permits prisoners to demand such timely dispositions of outstanding indictments. Efforts were made by the Commonwealth, within the initial 180 days after criminal charges were filed, although subsequent to the call for trial on January 15, 1975, to find the appellant so he could be tried. However, appellant's conduct in using a plethora of false names, apparently frustrated attempts to determine his whereabouts. In view of the fact that the case was called for trial within the initial 180 day period, I find no violation of Rule 1100. As appellant did not seek speedy trial through other means statutorily availa-

[1]. Frederick Duffan is, according to appellant's testimony in the instant case, his correct name. It is apparent however that he has used the name Adam Cunningham and many other names in his history of contacts with our criminal justice system.

ble to him during his period of incarceration, I find his trial to have been timely held.

Next, appellant contends the lower court erred in refusing to suppress evidence which appellant claims was obtained as a result of an unlawful arrest. The appellant reasons that he was only convicted of misdemeanors[2] and that he thus could not have been arrested without a warrant. We recently rejected a similar argument in highly analogous circumstances in *Commonwealth v. Mayer*, 240 Pa.Super. 181, 362 A.2d 407 (1976). There, as here, an officer stopped and then arrested occupants of an automobile which automobile and occupants fit a well detailed description from a police radio broadcast. Such broadcast informed the officer that the occupants had just been involved in a "theft". As in *Mayer*, the record in the instant case clearly shows that the arresting officer had reasonable cause, based on the broadcast, to believe that a felony may have been committed and was justified in stopping the car. The plain view of the department store clothing, with fresh tags, in the car certainly justified the arrest. The actual conviction of a misdemeanor cannot defeat the existence of probable cause to support the initial stop and arrest. The appellant's second claim of error should therefore be dismissed as lacking in merit.

I would affirm the judgment of sentence.

WATKINS, President Judge, and CERCONE, J., join in this dissenting opinion.

---

2.  Retail theft is a misdemeanor of the first degree when the merchandise involved has a value of over $100.00. See 18 Pa.C.S. § 3929. Conspiracy charges are defined in 18 Pa.C.S. § 903 and have the same grading and degree in these circumstances as the retail theft charge. See 18 Pa.C.S. § 905.