COMMONWEALTH of Pennsylvania, Appellee,

v.

Daryl NIXON, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 28, 2002.
Filed June 18, 2002.

John Packel, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee.

Before ORIE MELVIN, J., CERCONE, P.J.E., and CAVANAUGH, J.

CERCONE, P.J.E.

¶ 1 Appellant, Daryl Nixon, appeals from the judgment of sentence imposed April 11, 2001. After review, we affirm.

¶ 2 At approximately 12:40 a.m. on July 17, 2000, Officers Stephens and Moll of the Philadelphia Police Department responded to a radio report of a prowler. Upon arrival, they spoke to the complainant who lived at 2326 North 18th Street. While speaking with her, the officers heard banging noises coming from the row house next door, 2328 North 18th Street. The complainant told the officers that the house at 2328 was unoccupied. Officer Stephens went to the front of the property and Officer Moll to the rear. While shining his

flashlight through the mail slot in the front door of 2328, Officer Stephens saw two (2) men holding a fireplace mantle. When they saw the flashlight, the men dropped the mantle and ran toward the rear of the house. After additional officers arrived, Officers Stephens and Moll entered the house through a second story window. Appellant and his codefendant were discovered in the basement. They were arrested and subsequently tried on January 19, 2001, in a bench trial before the Honorable Amanda Cooperman in the Philadelphia County Court of Common Pleas.

¶ 3 Appellant was found guilty of burglary, criminal trespass, and criminal conspiracy.[1] He was sentenced on April 11, 2001, to two and one-half (2½) to five (5) years of imprisonment for the burglary, graded as a first degree felony, and one (1) to two (2) years for the conspiracy conviction set to run consecutive to the burglary. The conviction for criminal trespass merged with the burglary for sentencing purposes. Reconsideration of sentence was denied on April 23, 2001, and Appellant's notice of appeal was filed on May 9, 2001. At the direction of the Trial Court, Appellant filed a statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b) on May 11, 2001.

■ ¶ 4 Appellant presents one (1) issue for our review:

> Is an unoccupied row home undergoing renovation, and patently unsuitable for habitation as there was no electricity or water, "adapted for the overnight accommodation" of persons within the meaning of the burglary statute?

Appellant's Brief at 3. Appellant's issue essentially challenges the sufficiency of the evidence. It is well settled that

> [i]n reviewing the sufficiency of the evidence, we must determine whether the

evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offenses beyond a reasonable doubt.

*Commonwealth v. Johnson,* 556 Pa. 216, 727 A.2d 1089, 1092 (1999). The proper application of this test requires us to evaluate the entire trial record and all evidence actually received, in the aggregate and not as fragments isolated from the totality of the evidence. *Commonwealth v. Harper,* 485 Pa. 572, 403 A.2d 536 (1979).

¶ 5 Appellant's argument is based upon the contention that under subsection (c)(2) of the burglary statute, his conviction should have been deemed a second degree felony as opposed to a first degree felony, because the Commonwealth failed to introduce sufficient evidence that the home he burglarized was "adapted for overnight accommodation." Burglary is defined in the Crimes Code as follows:

> **§ 3502. Burglary**
>
> **(a) Offense defined.**—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.
>
> \* \* \*
>
> **(c) Grading.—**
>
> (1) Except as provided in paragraph (2), burglary is a felony of the first degree.
>
> (2) If the building, structure or portion entered is not ***adapted for overnight accommodation*** and if no individual is present at the time of entry,

---

1. 18 Pa.C.S.A. §§ 3502, 3503, and 903 respectively.

burglary is a felony of the second degree.

18 Pa.C.S.A. § 3502(a), (c) (emphasis added).

¶ 6 Prior to calling any witnesses, the prosecutor informed the Trial Court of a stipulation between the parties as to the testimony of Cooper Jones, the owner of the house at 2328 North 18th Street. They stipulated that Mr. Jones would have testified that the house was occupied by his daughter, Tanya, and grandson, Jamal, until a few months prior to the burglary in July of 2000. He occasionally stopped to make sure the house was secure, and in early July 2000 he had some work done on the house. He had never met either Appellant or his codefendant, and he never gave them permission to enter the house. As far as he knew, on July 17, 2000, the house was secure. As of that date, the house was still furnished; however, both the water and the electricity had been turned off. N.T. Trial, 1/19/01, at 17–20.

 ¶ 7 The Courts of this Commonwealth have not set forth either a test or a list of factors to be considered in determining whether a structure is adapted for overnight accommodation.[2] The Historical and Statutory Notes to section 3502 reveal that our burglary statute is similar to that of the Model Penal Code (MPC). Both prohibit the entry of a building or occupied structure without license or privilege to do so, with the intent to commit a crime therein. MPC § 221.1(1); 18 Pa.C.S.A. § 3502(a). Both also define occupied structure as "any structure, vehicle or place adapted for overnight accommoda-

tion of persons, or for carrying on business therein, whether or not a person is actually present." MPC § 221.0(1); 18 Pa.C.S.A. § 3501.[3]

¶ 8 The Notes of Decision to MPC section 221.1 pertaining to "building or occupied structure" direct our attention to *Commonwealth v. Mayer*, 240 Pa.Super. 181, 362 A.2d 407 (1976). In *Mayer*, our Court questioned "whether or not a finished but uninhabited house trailer is a 'building or occupied structure' within the meaning of § 3502 of the Crimes Code, since only buildings and occupied structures can be the subject of [burglary]." *Id.* at 408. As set forth above, an occupied structure is one adapted for overnight accommodation of persons, or for carrying on business therein. The house trailer in *Mayer* was stored on a lot with other similar trailers when it was burglarized. Without explanation, our Court concluded that the trailer was adapted for overnight accommodation. Rejecting Mayer's argument that the trailer could not be the subject of burglary because it was not used for human habitation, our Court concluded that "the legislature undoubtedly intended a house trailer, even though uninhabited, to be a 'building or occupied structure.'" *Id. Mayer* is the only Pennsylvania decision to address, albeit briefly, whether a structure has been adapted for overnight accommodation.

¶ 9 While we recognize that the decisions of the courts of other states are not binding upon the courts of this Commonwealth, we find the decision of the Texas Court of Criminal Appeals in *Blankenship v. State*, 780 S.W.2d 198 (1988) (en banc) to

---

**2.** We note that statutes are to be construed reasonably, and statutory words and phrases are to be read in accordance with their plain meaning and common usage. *See Kelly v. Jones*, 419 Pa. 305, 214 A.2d 345 (1965); *Commonwealth v. Bell*, 512 Pa. 334, 516 A.2d 1172 (1986).

**3.** Subsection (2) of MPC section 221.1 concerning the grading of the offense is not similar to the Pennsylvania statute.

be helpful to our analysis. *See Eonda v. Affinito,* 427 Pa.Super. 317, 629 A.2d 119 (1993) (Case law of other states not binding, but persuasive). In that case, the complainant, Weeks, owned a rental home which was situated on his property approximately three hundred yards from his home. Defendant Blankenship was arrested for burglarizing the rental home and was convicted of burglary, graded as a first degree felony. At the time of the burglary, the rental home was unoccupied. It had not been rented for two (2) years and the utilities were turned off. Weeks was using the house to store some of his personal property.

¶ 10 Texas criminal law divides burglary into two categories, burglary of a building, a second degree felony, and burglary of a habitation, a first degree felony. On appeal, Blankenship questioned whether there was sufficient evidence to prove that the rental home was a habitation as *defined by Texas law.* A *habitation* is defined as "a structure or vehicle that is adapted for the overnight accommodation of persons." *Id.* at 206 n. 2 (quoting V.T.C.A., Penal Code Sec. 30.01(1)).[4] In analyzing whether the rental home was a habitation, the *Blankenship* Court explained:

> What makes a structure "suitable" or "not suitable" for overnight accommodation is a complex, subjective factual question for a jury's determination. Their inquiry could be guided by reference to whether someone was using the structure or vehicle as a residence at the time of the offense; whether the structure or vehicle contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (e.g. house, apartment, condominium, sleeping car, mobile home, house trailer). All of these factors are relevant; none are essential or necessarily dispositive.

*Id.* at 209. After applying these factors to the case before them, the *Blankenship* Court held that a reasonable trier of fact could have found the rental home to have been adapted for overnight accommodation of persons, and it affirmed Blankenship's conviction.

¶ 11 Also helpful to our analysis is the decision of the Supreme Judicial Court of Maine in *State v. Albert,* 426 A.2d 1370 (Me.1981). Defendant Albert was convicted of burglarizing an unoccupied summer cottage in January 1978. The owner of the cottage had returned to her residence in Washington D.C. in September 1977 and did not intend to return to the cottage until June 1978. The utilities were disconnected, but the cottage was still furnished. The owner had arranged for a caretaker to watch the cottage in her absence. The question presented was whether the cottage was considered a "dwelling place" under the Maine Criminal Code.

¶ 12 In Maine, burglary is graded as a more serious offense when the burglarized structure is considered a dwelling place. Dwelling place is defined as "a structure which is adapted for overnight accommodation of persons, or sections of any structure similarly adapted. A dwelling place does not include ... structures formerly used as dwelling places which are uninhabitable. It is immaterial whether a person is actually present." *Id.* at 1374 n. 4 (quoting 17–A M.R.S.A. § 2(10)). Albert conceded that the cottage was adapted for overnight accommodation, but argued that the cottage

4. The definition of habitation was derived, in part, from the Model Penal Code, as well as from the statutes of other states. *See Jones v. State,* 532 S.W.2d 596, 599 (1976).

was "formerly used" as a dwelling place and was "uninhabitable" at the time of the burglary because it lacked heat and other utilities. In considering this argument, the *Albert* Court explained that "the temporary absence of occupants does not necessarily change the character of a dwelling place." *Id.* at 1374.

> In brief, the meaning of the exclusion is that, for practical purposes, the use of the structure as a dwelling place must have ceased permanently because it has become uninhabitable. The exclusion was aimed at structures that were once dwelling places but have been abandoned by their owners and allowed to deteriorate to the point that they can no longer be used as places of human habitation.

*Id.* In other words, the *Albert* Court considered the cottage to be adapted for overnight accommodation despite the fact that the utilities were disconnected and the owner had been absent for four (4) months and did not intend to return to the cottage for another five (5) months. Albert's conviction was affirmed.

■ ¶ 13 In *Commonwealth v. Stepp*, 438 Pa.Super. 499, 652 A.2d 922 (1995), the owner of a mobile home returned home and discovered a burglar inside. Defendant Stepp's issue on appeal involved the proper offense gravity score to be assigned to his crime under the sentencing guidelines, questioning whether the homeowner should be considered present if he did not arrive until after Stepp entered the home. While making its determination, the *Stepp* Court examined the commentary in the sentencing guidelines concerning subcategorized offenses, which provides in part: "Burglaries 'of a structure adapted for overnight accommodation' include homes, hotels, motels, camp structures, house trailers, etc." *Id.* at 924 (quoting Pa.C.Sent.3d p. 66 (August 1, 1988)). These examples do not consider whether a structure is inhabited; rather, they focus on the intended use or nature of the structure. In a footnote, the *Stepp* Court suggested that a department store would be an example of a structure not adapted for overnight accommodation. *Id.* at 925 n. 5. We agree that a department store is obviously not adapted for overnight accommodation, although it has running water and electricity and one could comfortably exist there overnight. Conversely, some camp structures do not have electricity or running water, and some house trailers, homes or motels are less comfortable than a department store might be; however, they are considered adapted for overnight accommodation.[5]

¶ 14 Appellant suggests we focus on the likelihood that someone will be present in the structure at the time of a burglary as opposed to the design of the structure. This suggestion is not helpful to Appellant, because there is a much greater likelihood of someone being present in the structures listed above which are intended to be used as living quarters, than in a structure such

---

5. In his brief, Appellant states: "We should not view the mere presence of furniture as 'adapting' the structure for overnight use anymore than we would characterize a business adapted for overnight use simply because there was a couch in the lobby and a microwave oven in the lunchroom." Appellant's Brief at 12. Appellant thus unintentionally supports our holding that the intended use of the structure should be the focus. Appellant continues: "If the structure, at the time of the entry, was humanly fit for overnight use, it meets the statute." *Id.* This argument does not support his prior suggestion that a business with a couch and microwave oven not be deemed adapted for overnight use. A business with a couch and microwave oven, and hence electricity, would be humanly fit for overnight use. Therefore, according to Appellant's logic, it should "meet the statute." Appellant cannot have it both ways.

as a department store or storage shed. In the instant case, the house was furnished and Appellant acknowledged that he was acquainted with the former residents. N.T., *supra* at 69. Appellant testified that he believed the house to be uninhabited, but was told months prior to the incident by one of the former residents, Jamal Jones, that he and his grandfather, Cooper Jones, still owned the property. *Id.* at 75–76. Appellant told Jamal Jones that he would look for him if he was in the neighborhood, which indicates that Appellant believed it possible that Jamal Jones might be living in the house again in the future. *Id.* at 76. As far as the testimony reveals, Appellant had no way of knowing whether Jamal Jones or anyone else had moved into the house subsequent to his conversation with Jamal Jones, or whether someone might have moved in that very day. Indeed, the fact that the Joneses retained possession of the house and left the furniture inside while work was done on the house implies their intent to inhabit the house again at some future time unknown to Appellant.

¶ 15 In support of his suggestion that we focus on the likelihood of someone being present in the structure, Appellant directs our attention to footnote two (2) in *Commonwealth v. Majeed*, 548 Pa. 48, 694 A.2d 336 (1997). The defendant in that case was convicted of burglary for entering a home of which he was the sole owner, because the trial court had issued a protection from abuse order denying him the right to enter. While discussing whether the defendant had the right to enter the house, the *Majeed* Court explained: "The historical principle underlying the law of burglary is the protection of the right of habitation. Today, although the Pennsylvania burglary statute applies broadly to any building or occupied structure, not just dwelling places, the focus remains the pro-tection of occupancy or possession, not merely ownership." *Id.* at 338 n. 2.

¶ 16 Appellant argues that because the footnote states that the law of burglary protects the right of habitation, we should look at the habitability of the home in order to determine whether it was adapted for overnight accommodation. He argues that because the home had no running water or electricity, it was uninhabitable and therefore not adapted for overnight use. The *Majeed* footnote, however, was meant to illustrate the principle that the law of burglary is meant to protect those who possess the right to inhabit or possess property. The note differentiates between those who inhabit or possess property with the concomitant right to enter and those who own property but have no right or privilege to enter, such as a landlord or one, such as the defendant in *Majeed*, who was denied the right to enter by court order. Appellant's argument is without merit.

¶ 17 Also without merit is Appellant's argument that "if an owner attempted to rent a property with no electricity or water, it would be quickly condemned as un-inhabitable." Appellant's Brief at 12. Rental properties are often without water service or electricity when rented, but the properties are not condemned. A simple telephone call to the relevant utility companies remedies the situation.

¶ 18 Although no clear-cut test exists, we believe the examples given in the commentary to the sentencing guidelines, and the holding in *Mayer*, that a finished but uninhabited house trailer was adapted for overnight accommodation, in-dicate that the focus of the determination of whether a structure is adapted for over-night accommodation should be the nature of the structure itself and its intended use, and not whether the structure is in fact inhabited. An examination of the house

burglarized in the instant case leads us to the reasonable conclusion that it was intended to be used as a residential property and was adapted for overnight accommodation as found by the Trial Court. Accordingly, we affirm the judgment of sentence.

¶ 19 Judgment of sentence affirmed.