Commonwealth *v.* Stephens, Appellant.

Argued March 21, 1974. Before WATKINS, P. J., JA-COBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*George E. Goldstein,* with him *Robert M. Rosenblum,* and *Goldstein & Rosenblum,* for appellant.

*Grant E. Wesner,* Deputy District Attorney, with him *Robert L. VanHoove,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., December 11, 1974:

Appellant, Lenwood Stephens, was tried before a jury and convicted on March 23, 1971, of conspiracy[1] and illegal possession of marijuana.[2] On this appeal he contends that the evidence was insufficient to support these verdicts, and that the search warrant was improperly issued because there was no probable cause.

Appellant operated a store, the Perelandra, in Reading, Pennsylvania. The store consisted of three rooms, all on one floor. Most of the merchandise was displayed and sold in the front room. A back room contained additional merchandise but served mostly as a sitting room for patrons. There was a bathroom connected to the back room. Marcel Cafurello worked at the store on a part-time basis but received no salary. It appears that Cafurello and his girl friend had recently come from Arizona and had met appellant when they were hitchhiking and appellant gave them a lift. Appellant told Cafurello that while he was looking for work he and his girl friend could stay in appellant's apartment with appellant and his wife and child. Cafurello worked in appellant's store in return for this kindness.

On the afternoon of July 14, 1970, a plainclothes police cadet entered the front room of the Perelandra and proceeded directly to Cafurello, who was in front of the counter. The cadet asked Cafurello if he was "holding" any marijuana. Cafurello replied that he was, and that it was in the back room. The cadet asked Cafurello how much he wanted for it, and Cafurello said $40. The cadet had made two previous purchases from Cafurello, but appellant had not been present on either of those occasions. It appears from the affidavit in support of the search warrant that one of these purchases was in the

_____

[1] Act of June 24, 1939, P. L. 872, §302, 18 P.S. §4302. Repealed Act of December 6, 1972, P. L. 1482, No. 334, §5.

[2] Act of September 26, 1961, P. L. 1664, §4(q), 35 P.S. §780-4(q). Repealed Act of April 14, 1972, P. L. 233, No. 64, §43.

store, the other outside, in the cadet's car. This time, appellant was in the store and about two feet from Cafurello, on the other side of the counter. He did not react or respond to the conversation between the cadet and Cafurello.[3] The cadet left, ostensibly to get his money, while Cafurello headed toward the back room. A raiding party then entered pursuant to a search warrant and with an arrest warrant for Cafurello. One detective read the warrant to appellant, while another apprehended Cafurello in the bathroom, where he was fumbling with a Persian lamb coat in which two ounces of marijuana were found. At appellant's trial, Cafurello, who had pleaded guilty at his own trial, testified that the marijuana was his alone and that appellant did not know about it. Appellant also testified that he did not know about the marijuana.

This evidence must be regarded in the light most favorable to the Commonwealth, and the Commonwealth must be given the benefit of all reasonable inferences arising from it. *Commonwealth v. Herman,* 227 Pa. Superior Ct. 326, 323 A.2d 228 (1974) ; *Commonwealth v. Minor,* 227 Pa. Superior Ct. 343, 322 A.2d 717 (1974). So regarded, it nevertheless was insufficient to support either the conspiracy or possession conviction. Accordingly the issue of the propriety of the search warrant need not be decided.

## I.

Conspiracy is an agreement between two or more parties to do an unlawful act. *Commonwealth v. Wilson,* 449 Pa. 235, 296 A.2d 719 (1972) ; *Commonwealth*

---

[3] This statement of the facts is as favorable as possible to the Commonwealth. There is in fact considerable conflict in the record about where the cadet, Cafurello, and appellant were in relationship to each other, and as to whether appellant could have overheard the conversation between the cadet and Cafurello.

*v. Neff,* 407 Pa. 1, 179 A.2d 630 (1962). The agreement can seldom be directly proved, nor need it be. *Commonwealth v. McCoy,* 209 Pa. Superior Ct. 399, 228 A.2d 43 (1967). Proof may be by showing circumstances from which the agreement may be inferred. *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth v. Neff, supra; Commonwealth v. Horvath,* 187 Pa. Superior Ct. 206, 144 A.2d 489 (1958).

Among these circumstances may be proof of past relationship. In the present case the only evidence of past relationship was that Cafurello was given temporary room in appellant's apartment and in return worked part time at the Perelandra. To infer conspiracy from this evidence would be to indulge in mere suspicion, which will not support a verdict. *Commonwealth v. Santana,* 216 Pa. Superior Ct. 183, 264 A.2d 724 (1970). The fact that Cafurello had made two previous sales to the cadet, one at and one outside the Perelandra, cannot change suspicion to proof, for there was no evidence that appellant knew of those sales. Indeed, the cadet testified that he had never met or even seen appellant until the day of the arrest. The decision in *Commonwealth v. Yobbagy,* 410 Pa. 172, 188 A.2d 750 (1963), is instructive. The defendant and one DiEmidio were employees of the Commonwealth assigned to inspect mines. While inspecting a strip mining operation they told the operators, Mr. and Mrs. Farester, that they were stripping beyond the area for which they had a permit; on the way to the company office, Yobbagy further told Mrs. Farester that DiEmidio "could be talked to . . . only what he saw was reported . . . ." *Id.* at 178, 188 A.2d at 752. Later, upon learning from his wife of this suggestion, Mr. Farester gave DiEmidio $400 ($200 for him and $200 for the defendant) and was told by DiEmidio that the stripping operation would not be bothered. There was no evidence that the defendant knew these facts, or that he received any

money. In setting aside the defendant's conviction of conspiracy as not supported by sufficient evidence the Supreme Court said:[4] "Yobbagy may well have intended, when he made this suggestion to Mrs. Farester, that DiEmidio could be 'talked to' for a price and it may well be that such suggestion arose as the result of an agreement to that end betweeen Yobbagy and DiEmidio. However, the Commonwealth has failed to so prove in the manner and according to the standard of proof required by the law. That which we said in Commonwealth v. Neff, supra (p. 15), is apposite in the case at bar: '. . . In short, the Commonwealth has not proven the formation of an agreement—the gist of the crime of conspiracy—between [DiEmidio and Yobbagy] to accomplish either an unlawful purpose or a lawful purpose by unlawful means.' " *Id.* at 179, 188 A.2d at 753. In short, the proof of the relationship between DiEmidio and Yobbagy created much more suspicion than did the proof here of the relationship between appellant and Cafurello; as the former was insufficient to support an inference of prior agreement, *a fortiori,* so was the latter.

It may also be relevant in establishing conspiracy to prove subsequent acts, depending, again, upon whether those acts were such as to support an inference of prior agreement. *Commonwealth v. Kelson,* 134 Pa. Superior Ct. 132, 3 A.2d 933 (1939). Here it was shown that appellant was in the room when Cafurello offered to make the sale, and that he did not react to the offer. This was not proof of a subsequent act sufficient to show prior agreement. The Commonwealth seeks to infer from the proof of appellant's presence in the front room that appellant overheard the conversation, and then to infer that he realized that marijuana was to be sold in the Perelandra, and then to infer that he had

---

[4] BELL, C. J., dissenting.

made a prior agreement to the sale. The first two inferences are reasonable enough (according to the cadet, appellant was close enough to overhear the conversation between the cadet and Cafurello), but the third inference is not, for it does not follow from the first two. Knowledge that another proposes unlawful action does not alone show conspiracy. Two United States Supreme Court cases are instructive. In *United States v. Falcone*, 311 U.S. 205 (1940), distributors of sugar, yeast, and cans were charged with conspiracy because they sold their wares to persons engaged in the illicit manufacture of liquor. The Court reversed their conviction, holding that one who sells materials knowing that they are to be used for illegal distillation is not, without more, guilty of conspiracy. Not only must there be proof that supports the inference of knowledge, there must also be proof that supports an inference of intent to further and cooperate in the unlawful act. In *Direct Sales Co. v. United States*, 319 U.S. 703 (1943), a mail-order wholesale drug corporation made sales of morphine sulfate in unusually large quantities and on a frequent and continuous basis to a physician who in turn would illegally sell the morphine. The Court distinguished *Falcone* and affirmed the corporation's conviction for conspiracy. In *Falcone*, the suppliers had knowledge of the illegal use, but that was all. In *Direct Sales*, there was the reasonable inference of knowledge, but in addition there was evidence of the degree of advertising, manner of business, frequency and continuity of sales, indicating prolonged cooperation between the two parties. Only with this additional evidence was the Court ready to take the step from inferring knowledge to inferring intent and agreement. There was then "more than suspicion, more than knowledge, acquiescence, carelessness, indifference, lack of concern." *Direct Sales Co. v. United States, supra* at 713. There was also "informed and interested cooperation, stimulation, instiga-

tion. And there [was] also a 'stake in the venture' which, even if . . . not essential, is not irrelevant to the question of conspiracy." *Id.* This case is like *Falcone* and unlike *Direct Sales,* for here there was not sufficient evidence to allow the step from knowledge to intent and agreement. That is especially true since the only knowledge that appellant had was that obtained at the time the unlawful act was committed. Since there was no evidence that appellant had *prior* knowledge, there was accordingly no basis from which to infer that appellant had been involved before the day of the arrests. Appellant did not induce Cafurello to sell marijuana, nor did he aid or assist him at the time of the sale. There was also no showing that appellant had received any money from Cafurello. In short, the only thing that was shown was that appellant stood mute and unresponsive after overhearing the conversation between the cadet and Cafurello. That evidence, while supporting an inference of knowledge, cannot support the further inference of agreement, for the "informed and interested cooperation" that *Falcone* and *Direct Sales* held to be so necessary to proceed from one inference to the other was not shown. Charges of conspiracy cannot be made by piling inference upon inference without logical nexus, "thus fashioning . . . a dragnet to draw in all substantive crimes." *Direct Sales Co. v. United States, supra* at 711.[5]

---

[5] Even proof of participation in an offense does not necessarily prove the participant guilty of conspiracy to commit the offense. *Commonwealth v. Neff, supra.* "The evidence must convince that the defendant did something other than participate in the offense which is the object of the conspiracy. There must, in addition thereto, be proof of the unlawful agreement and participation therein . . . ." *Dahly v. United States,* 50 F.2d 37, 43 (8th Cir. 1931), quoted in *Commonwealth v. Yobbagy, supra* at 177, 188 A.2d at 752. If proof of participation is not enough, proof of contemporaneous knowledge that a crime is about to be committed cannot be enough.

## II.

Since no marijuana was discovered on appellant's person, the Commonwealth proceeded on the theory that appellant had constructive possession of the marijuana found in the Persian lamb coat that Cafurello was fumbling with in the bathroom. No matter how close a defendant is to contraband, if it is not on his person he only possesses it constructively. Note, Possession of Narcotics in Pennsylvania: Joint Possession, 76 Dick. L. Rev. 499, 506 (1972). An individual has constructive possession of an item if he has the power to control and the intent to control the item. *Commonwealth v. Townsend,* 428 Pa. 281, 284, 237 A.2d 192, 194 (1968). *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971). *See also Montoya v. United States,* 402 F. 2d 847 (5th Cir. 1968). Since the marijuana was in appellant's store it may be assumed he had the power to control it. The evidence was insufficient to show, however, that he had the intent to control it.

To prove intent to control it must be shown that the defendant had knowledge of the presence of the contraband. *Commonwealth v. Armstead,* 452 Pa. 49, 305 A.2d 1 (1973); *Commonwealth v. Schulhoff,* 218 Pa. Superior Ct. 209, 275 A.2d 835 (1971). This knowledge can be inferred from the surrounding circumstances. *Commonwealth v. Whitman,* 199 Pa. Superior Ct. 631, 186 A.2d 632 (1962). Here it may be said that the Commonwealth showed that appellant did have knowledge of the presence of marijuana in his store since there was evidence that appellant was near and therefore probably overheard Cafurello say to the police cadet "that he had two ounces of grass, if I [the cadet] wanted them, and that he had them in the back room." However, this is not the type of knowledge required. The purpose of the constructive possession doctrine is to expand the scope of possession statutes to encompass those cases where actual possession at the time of the arrest

cannot be shown but where the inference that there has been actual possession is strong. Whitebread and Stevens, To Have and To Have Not, 58 U. Va. L. Rev. 751 (1972). Here there is no evidence that appellant had any knowledge of the presence of the marijuana until he overheard the conversation; and apparently, judging from the cadet's testimony, this was only seconds before the raiding party entered. Granting that as a result of the conversation appellant learned there was marijuana "in the back room," that knowledge was too recently acquired to permit one to infer from it that appellant intended to control the marijuana. In short, no more was shown than appellant's presence at the scene when the offer to sell was made. Presence alone is not enough to implicate a party in the crime of possession. *Commonwealth v. Florida,* 441 Pa. 534, 272 A.2d 476 (1971); *Commonwealth v. Reece,* 437 Pa. 422, 263 A.2d 463 (1970); *Commonwealth v. Tine,* 221 Pa. Superior Ct. 318 (1972).

The court below placed some emphasis on appellant's proprietary interest in the Perelandra, noting that appellant "was for all practical purposes the sole tenant." It cannot be inferred from that tenancy, however, that appellant knew the marijuana was in his store. Accordingly, neither can it be inferred that he intended to control the marijuana. In *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974), the Supreme Court has recently held evidence insufficient to convict the resident of a home of possession even though twenty-one packets of heroin were found on her kitchen floor. When the police entered, the resident was upstairs. Four people were seated in the living room, but they fled out the back door when the police arrived. Reversing, the Court said:[6] "We cannot assume that a resident of a

---

[6] POMEROY, J., dissented; JONES, C. J., and NIX, J., did not participate in the decision.

home, where guests are present, knows of the full contents of the premises." *Id.* at 369, 318 A.2d at 329. There, the heroin was in plain view. Here, the marijuana was in a coat not belonging to appellant, in a back room open to the public. "Undoubtedly, the fact of possession loses all persuasiveness if persons other than the accused had equal access with him to the place in which the property was discovered." *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971). *Cf. Commonwealth v. Kauffman,* 155 Pa. Superior Ct. 347, 38 A.2d 425 (1944). *And see Commonwealth v. Schulhoff, supra.* Thus proof of appellant's tenancy of the Perelandra was insufficient to show his constructive possession of the marijuana.

The judgments of sentence are reversed and appellant is ordered discharged.