426 A.2d 669

**COMMONWEALTH of Pennsylvania,**

v.

**Robert T. HOETZEL, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed Feb. 20, 1981.

624

Alan Ellis, State College, for appellant.

Michael M. Palmisano, Assistant District Attorney, State College, for Commonwealth, appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

On April 17, 1978, appellant was convicted of possession of marijuana and amphetamines[1] with intent to deliver.[2] Sentence was imposed on January 23, 1979 ordering appellant to be incarcerated for a period of one year and to pay a fine of Three Hundred Dollars. Motions in arrest of judgment and for a new trial were denied on November 22, 1978. We disagree and reverse to the amphetamines related charge and remand for a new trial as to the marijuana related charge.

Information that the appellant was selling marijuana at his residence on November 9, 1977 was reported to the Pennsylvania Department of Justice, Bureau of Drug Control. Relying upon that information, on November 10, 1977, a search warrant was issued and served upon the appellant at his residence. Appellant's residence was a two-story dwelling where he rented rooms to five tenants.

The dwelling was not partitioned into separate living quarters. Instead, the tenants shared the common areas, like the kitchen and the livingroom, while regarding only the bedrooms as private.

None of the evidence seized during this search was found on appellant's person. Instead, marijuana was found in the livingroom area, kitchen and the basement, while the amphetamines were found in the kitchen and in appellant's bedroom. Drug related paraphernalia and pieces of equipment were found on the premises also. Based upon this evidence, appellant was brought to trial and eventually convicted.

1. 35 P.S. 780–113(a)(30).

2. 35 P.S. 780–113(a)(16).

Through new counsel, the appellant now seeks our determination on the following issues:

(1) that the evidence was insufficient to sustain the verdict of possession of amphetamines, as there was an insufficient quantity to cause a harmful effect on the central nervous system;

(2) the trial counsel was ineffective for not objecting to the trial court's instructions to a finding of "possession;"

(3) the trial counsel conducted an ineffective cross-examination of a prosecution witness.

The thrust of the appellant's first contention is that the trial court retroactively and improperly applied the amended version of 35 P.S. § 780–104(2)(iii) which elevated the possession of amphetamines from a Schedule II to a Schedule I drug. Hoetzel claims the amendment was not to become effective until eight months following his conviction. Accordingly, we are asked to determine whether this retroactive application of the amended statute in the appellant's case was an invalid exercise of the law.

The Controlled Substance, Drug, Device and Cosmetic Act divides controlled substances into five categories. The appellant was convicted of violating subsection iii of Schedule II, the possession of amphetamines, and subsection iii of Schedule I, the possession of marijuana. At the time of appellant's arrest, November 10, 1977, and subsequent conviction, April 17, 1978, subsection iii of Schedule II, read in conjunction with other parts of the Act, made it a crime to possess with intent to deliver the following:

(iii) Unless specifically excepted or unless listed in another schedule, any material compound, mixture or preparation which contains any quantity of the following substances, having a potential for abuse associated with a stimulant effect on the central nervous system.

1. Amphetamine, its salts, optical isomers, and salts of its optical isomers.

2. Phenmetramine and its salts.

3. Methylphenidate.

4. Any substance which contains any quantity of meth-amphetamine including its salts, isomers and salts of isomers.[3]

On November 26, 1978, this statute was amended and the words "having a potential for abuse associated with a stimulant effect on the central nervous system" were deleted.[4] This deletion transformed the possession of amphetamines from a Schedule II offense to a Schedule I crime. The transformation was to become effective in 60 days from the date of passage, November 26, 1978. Thus, the effective date of the amended statute was January 26, 1979.

The chronology of events depicting appellant's alleged involvement with the controlled substances deserves further exposition. His violation occurred on November 10, 1977; verdict rendered April 17, 1978; and sentence imposed on January 23, 1979. The statute under which appellant was convicted was not even officially amended by the legislature until November 26, 1978, seven months following appellant's conviction. Most critically, the effective date of that amendment, January 26, 1979, occurred nine months subsequent to appellant's conviction.

Under the law in effect when appellant was arrested and convicted, it was not a criminal offense to possess a quantity of amphetamines which did not have "a potential for abuse associated with a stimulant on the central nervous system." *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979).

In response to the precise issue we address today, the Supreme Court of Pennsylvania was faced with interpreting the language of subsection iii on Schedule II as it existed under the prior law which was in effect at the time of appellant's arrest and conviction in *Driscoll*, supra. In order to give effect to the legislature's intent, the court interpret-

**3.** 35 P.S. § 780–104(2)(iii).

**4.** 35 P.S. § 780–104(2)(iii) subsequently amended and replaced by 35 P.S. § 780–104(4)(iii) of the Controlled Substance, Drug, Device and Cosmetic Act, as amended 1978, November 26, P.L. 1392, § 328, § 1, effective in 60 days.

ed the above statute using the specific language of the Act. This complied with the legislative mandate that courts are to strictly construe penal statutes and that any ambiguity contained in such a statute are to be interpreted in favor of the accused and against the prosecution.[5]

Accordingly, in reversing judgment of sentence and discharging the appellant, the justices determined:

> The obvious intent of the legislature in establishing subsection iii in Schedule II was not to prohibit the possession or delivery of amphetamines in *any* amount, as those substances in subsections i and ii are prohibited. Rather, the intent was to prohibit the possession or delivery of amphetamines containing a sufficient quantity having a potential for abuse.
>
> To interpret the phrase (... which contains any quantity of the following substances, *having a potential for abuse associated with a stimulant effect on the central nervous system*) with the underlying portion modifying (substance) and not (quantity) actually reduces the underlying portion to surplusage. In order to give meaning to the words, as we are required to do, we must interpret them as modifying (quantity).

Id., 485 Pa. at 107, 401 A.2d at 316, emphasis supplied.

Therefore, the trial court, under the *Driscoll,* supra, analysis is required to demonstrate that appellant possessed a quantity of amphetamines having a potential for abuse associated with a stimulant effect on the central nervous system.

The Commonwealth strenuously argues that in amending Schedule II, the legislature was not making a substantive change in the law but merely clarifying its original intent that any quantity of amphetamines would be sufficient for conviction. The Commonwealth, therefore, asserts that *Commonwealth v. Driscoll,* supra, has been overruled by the legislative amendment. This contention is meritless.

5. Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1928(b)(1) (Supp. 1978–79).

First, without regard of what the legislature truly intended when enacting the prior law, the *Driscoll* doctrine is the judicial interpretation of the statute in effect at the time of the crime. Second, the *Driscoll* decision was rendered by the Supreme Court on May 1, 1979, four months after the effective date of the statutory amendment. Therefore, our decision today is bound by the opinion in *Commonwealth v. Driscoll*, supra, unless we can find these facts those under which retroactive application of a law is applicable.

■ Ex post facto constitutional provisions are a limitation upon the actions of a legislature. It attempts to preserve for persons the right to fair warning that their conduct will give rise to criminal penalties. *Frank v. Mangum*, 237 U.S. 309, 344, 35 S.Ct. 582, 59 L.Ed. 969 (1915). It is fundamental to our concept of constitutional belief. *U. S. v. Harris*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954).

■ Preservation of this fundamental right has been traditionally achieved in Pennsylvania through the application of a four-pronged test. Accordingly, the amended statute cannot be retroactively applied to the appellant if one of the following criteria is found to be present:

1. The law makes an act criminal which was not criminal when done;
2. The law aggravates a crime [—] one which makes it greater than it was when committed;
3. The law changes a punishment, and makes it greater than it was when a punishable act was committed;
4. The law alters the rules of evidence and requires less or different testimony than the law required at the time the offense was committed in order to be convicted.

*Commonwealth v. Riley*, 253 Pa.Super. 260, 264, 384 A.2d 1333, 1335 (1978); see also *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798); *Commonwealth v. Kalck*, 239 Pa. 533, 87 A. 61 (1913); *Commonwealth v. Pickett*, 244 Pa.Super. 433, 368 A.2d 799 (1976).

■ When appellant was arrested, it was a criminal offense to possess a quantity of amphetamines that had a potential for abuse associated with a stimulant effect on the central nervous system: *Commonwealth v. Driscoll*, supra. The possession of a quantity determined to have a less severe effect, therefore, was not illegal.

Similarly, under the prior law, the Commonwealth was charged with the burden of establishing that the quantity allegedly possessed was a sufficient amount to meet the quantitative test.

Thus, two of the four prongs, parts 1 and 4, of the retroactivity test are met, making the application of the amended statute to the appellant's actions an exercise of an invalid ex post facto law.

Based upon the totality of the record, we decide that the Commonwealth did not introduce sufficient evidence to establish the facts necessary to meet the requirement of the law.

Appellant's second allegation is that his trial counsel was ineffective for not objecting to the lower court's charge as to the elements of "possession." We agree with appellant and grant him a new trial as to the charge of possession of marijuana.

The Pennsylvania Supreme Court in the similar case of *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352–53 (1967) stated:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel has *some reasonable basis designed to effectuate* his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record.

(Emphasis in original.)

■ The standard we are to apply when reviewing ineffectiveness claims involving allegedly improper actions regarding jury instructions require us to ask:

Whether the charge considered as a whole is a fair and complete presentation of the issue and theories involved? *Delp v. Heath*, 234 Pa.Super. 607, 340 A.2d 530 (1975); [b]ecause if the charge was inadequate to inform the jury of the law, counsel was ineffective in failing both to object after the charge and to supplement the charge with an appropriate point for charge.

HOFFMAN, J., dissenting. As appears in *Commonwealth v. Stanton*, 479 Pa. 521 at 525, 388 A.2d 1053 at 1055 (1978), reversing the Superior Court decision in *Commonwealth v. Stanton, supra.*

The appellant was charged with intent to deliver marijuana. Yet, the trial court found none of the evidence on the person of the appellant. The record clearly establishes that no controlled substances were found on appellant's person. The contraband found by the police officers was in the livingroom, kitchen, basement, and in appellant's bedroom.

■ It is clearly established that regardless of one's proprietary interest in the dwelling where the controlled substances are found,[6] if the contraband is not found on the person of the defendant, the Commonwealth must prove constructive possession. *Commonwealth v. Updegrove*, 223 Pa.Super. 7, 296 A.2d 854 (1972); *Commonwealth v. Schuloff*, 218 Pa.Super. 209, 275 A.2d 835 (1978); *Commonwealth v. Chenet*, 237 Pa.Super. 226, 352 A.2d 502 (1976); *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975).

■ Constructive possession requires not only the ability to control a substance but the intent to do so. *Commonwealth v. Stephens*, 231 Pa.Super. 481, 331 A.2d 719 (1947).[7]

6. As in the present case, "It is true that the fact of possession loses persuasiveness if persons other than the accused had equal access to the place in which the contraband was found. *Commonwealth v. Davis*, 444 Pa. 11, 280 A.2d 119 (1971).

7. The element of intent to control is essential not only to constructive possession, but also actual possession. If a person is to possess a controlled substance, he must have the power to control and the intent to control that substance. *Commonwealth v. Santana*, 460 Pa. 482, 333 A.2d 876 (1975).

■ Trial counsel incorrectly requested a charge for possession, rather than constructive possession. The court followed trial counsel's suggested instruction and original counsel compounded his error by failing to object to the absence of a constructive possession instruction.

Therefore, appellant was denied effective assistance of counsel for two reasons: First, the proposed charge did not request the definition of constructive possession. Second, once the inadequate charge was given, counsel should have objected to the judge's failure to adequately define an essential element of both actual and constructive possession. On the intent to exercise control, see: *Commonwealth v. Updegrove*, supra; *Commonwealth v. Schuloff*, supra.

There is no "reasonable basis designed to effectuate [appellant's] interest," in requesting an incorrect charge and then failing to object: *Commonwealth ex rel. Washington v. Maroney*, supra. Hence, appellant's conviction of possession of marijuana is reversed and we remand for a new trial as to that charge.

In light of the prior holdings, a disposition on the merits of appellant's third claim is unnecessary.

Judgment of sentence reversed as to the possession of amphetamines charge. We remand for a new trial on the possession of marijuana charge.

PRICE, J., concurs in the result.