## Commonwealth v. Land

*Robert Selig*, for Commonwealth.
*Gary Kleitman*, for defendant.

NICHOLAS, *J.*, October 13, 1981—On March 18, 1981, George Joseph Land was found guilty following a non-jury trial before the undersigned of possession of a controlled substance (marijuana)[1], the manufacture of a controlled substance (methamphetamine-hydrocholoride, commonly known as ("speed")[2] and attempt to manufacture a controlled substance ("speed")[3]. Post-verdict motions were denied and on August 12, 1981, defendant was sentenced to pay a fine of $1,000, the costs of prosecution, and to undergo imprisonment for not less than one and one-half years nor more than five years. The said sentence was imposed on the manufacturing charge with an identical concurrent sentence imposed on the attempt charge. On the possession of marijuana charge, a concurrent prison term of not less than six months nor more than 12 months was imposed.

Defendant has perfected an appeal to the Superior Court of Pennsylvania from the judgment

1. 35 Pa.C.S.A. §780-113(a)(16).

2. 35 Pa.C.S.A. §780-113(a)(30).

3. 18 Pa.C.S.A. §901.

of sentence.[4] Pursuant to Pa.R.A.P. 1925(b), appellant, as directed, filed a concise statement of the matters complained of on the appeal. The assignments of error are as follows:

1. That defendant did not knowingly, intelligently and voluntarily waive his right to a jury trial;

2. That the search warrant issued for his premises was not supported by probable cause;

3. That the seizure of items not specifically enumerated in the search warrant was beyond its scope and unlawful;

4. That the evidence was insufficient to sustain the conviction;

5. That appellant was denied the effective assistance of trial counsel.

The court has carefully considered each of these contentions and we conclude that they are without merit.

## I. WAIVER OF JURY TRIAL

Defendant's contention that he did not knowingly, intelligently and voluntarily waive his right to a jury trial is belied by the record. The court and counsel conducted a comprehensive colloquy with defendant in which all of the elements of the right to jury trial were explained to appellant and waived by him.

The test for judging the validity of a waiver of jury trial is whether the essential ingredients of a jury trial have been explained to defendant and that they knowingly, intelligently and voluntarily were waived by him. In Commonwealth v. Williams, 454 Pa. 368, 373, 312 A. 2d 597, 600 (1973), the court held:

---

4. See editor's note at end of opinion.

"These essential ingredients, basic to the concept of a jury trial are the requirements that a jury be chosen from members of the community, that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury."

As required by Pa.R.Crim.P. 1101, in addition to the on-the-record colloquy with defendant which satisfied the court that his waiver was knowing, intelligent and voluntary, defendant executed a written waiver of jury trial which was made part of the record: Com. v. Baxter, 282 Pa. Superior Ct. 467, 422 A. 2d 1388 (1980). Both the on-the-record colloquy with appellant as well as the written waiver include all of the essential ingredients of a jury trial. Defendant's contention that his waiver of jury trial was invalid is without merit.

## II. SEARCH WARRANT

This prosecution resulted from the execution of a search warrant at premises leased by appellant at 1857 Old York Road, Abington Township, this county. The premises were a single two-story house. The search warrant was obtained by Pennsylvania State Trooper Walter T. Zdunowski, who was the affiant on April 2, 1980. The search warrant was executed at about 6:30 p.m., on that date by state and local police. Execution of the search warrant resulted in the seizure of in excess of one pound of marijuana contained in several plastic bags found within a locked safe in a second floor bedroom; a variety of laboratory equipment including a mortar and pestle, pyrex chemical apparatus such as beakers, test tubes, glass tubing, litmus paper, calibrated glass droppers, funels, an Ohaus scale with weights, as well as certain chemicals. The chemicals included hydrochloric

acid, ether, isopropyl alcohol, carbon, and acetone. Additional items seized included a telephone bill in the name of appellant which was found on the desk on the second floor, a Western Union Mailgram addressed to defendant at 1857 Old York Road and dated March 22, 1980, and a piece of literature, found on the bedroom floor, directed to defendant at the same address from Edmond Scientific Company.

After the items were seized, a laboratory analysis revealed the presence of methamphetamine hydrochloride residue on a number of pieces of the chemical apparatus seized including the pyrex glassware, test tubes and stirring rods. In addition, methamphetamine hydrochloride residue was found within two of the plastic baggies and on a piece of used paper toweling. Expert testimony was offered by Alexander Stirton, a Criminalist employed by the Pennsylvania State Police and Don Jerre Miller, a Federal DEA Agent, that the type and quantity of chemicals found and the array of laboratory equipment plus the presence of methamphetamine hydrochloride residue on a number of items of laboratory equipment, was indicative of the clandestine manufacture of methamphetamine hydrochloride from liquid methamphetamine base. The process was described as the "latter stages of manufacturing" by Agent Miller whereby liquid methamphetamine base was converted into the commonly abused crystalline form of methamphetamine hydrochloride. This process could be completed in 10 to 12 hours.

The probable cause portion of the search warrant and affidavit provides as follows:

"Probable cause belief is based on the following facts and circumstances:

I, the affiant, am a member of the Pennsylvania State Police, currently engaged in narcotics investigations, and have been employed as such for the past eight years.

On December 21, 1979, I, the affiant, received information from a confidential and reliable informant who stated that George Land was engaged in the sales of Methamphetamine from the above mentioned residence. Informant further stated that he had observed George Land in possession of Methamphetamine on numerous occasions and that he had also observed Land sell to juveniles.

As a result of this information, I, the affiant, conducted a surveillance of the above mentioned residence. During the course of the surveillance, this affiant did take photographs of the above mentioned resience. Observed parked in the rear of the residence was a Chevrolet pickup truck, Penna. Reg. no. CF67503, registered to George J. Land, also a Plymouth, Penna. Reg. no. 4V9446, registered to Joane C. Patrone.

As result of the aforementioned surveillance, conducted on December 28, 1979, in the daylight hours, and December 29, in the evening hours, reporting officer did not observe any traffic to and from the house. As a result of this negative surveillance, this affiant contacted the informant, and it was at this time that the informant stated to this affiant, that George Land was not in possession of Methamphetamine at this time. Informant further stated that when he learns that George Land is in possession he would contact this affiant again.

As a result of the above information, this affiant had conversation with Detective Raymond Kuter, Abington Police Department, and it was revealed that the information furnished by the informant was true, Kuter further stated that he had received

information from numerous street sources that George Land was in fact involved in the sales of Methamphetamine.

On April 1, 1980, this affiant received information from another informant who stated that on March 30, 1980, George Land was in possession of a quantity of Methamphetamine. This second informant furnishing information has furnished information to this affiant relative narcotics investigations, but all are currently pending arrests or further investigations. Information furnished by this second informant has proven to be correct and true.

As result of receiving the information from the second informant, this affiant again contacted the first mentioned informant. As result of this contact, the first informant proceeded to the aforementioned residence in the evening hours of April 1, 1980, and it was at this time that he did observe George Land is possession of a quantity of Methamphetamine while inside of the above mentioned residence, 1857 Old York Road.

The first mentioned informant has proven reliable in the past, in that he has furnished information to this affiant that has resulted in at least three arrests for narcotics violations, two resulting in convictions in Montgomery County Court, and one currently pending court action.

It is for the above mentioned probable cause that this affiant believes that George Land is in violation of the Pennsylvania Drug Laws at the above mentioned residence and a search warrant is being requested. Walter T. Zdunowski, Trooper, Pennsylvania State Police."

At the conclusion of the suppression hearing, as required by Pa.R.Crim.P. 323(i), the court entered

on-the-record a statement of findings of fact and conclusions of law in support of our order denying the motion to suppress evidence as follows:

"The court has very carefully reviewed the affidavit for a search warrant and I find that it does set forth sufficient probable cause to warrant the search, to justify the search.

Looking at the Affidavit I believe it sets forth—and it meets both prongs of the Aguilar-Spinelli test.

The informant's credibility I think is adequately established by the recitation that the informant has proven reliable in the past and that he's furnished information to the affiant that has resulted in convictions in Montgomery County Court and one currently pending court action. I find that nothing that was testified to today in cross-examination of Trooper Zdunowski or former Trooper Zdunowski casts any doubt upon the verity of that statement, and so I think it was properly considered by the issuing authority in determining the first prong of the Aguilar-Spinelli test the credibility of the informant.

The next prong is for the court to be satisfied that the Affidavit sets forh an adequate basis to determine the reliability of what the informant reported, that is, how did the informant know whereof he spoke and was his knowledge current, fresh, as opposed to being stale, and counsel has correctly zeroed in on the significant paragraphs of the Affidavit.

The third paragraph up from the bottom of the second page reads as follows: As a result of receiving the information from the second informant, this affiant again contacted the first-mentioned informant. As a result of this contact, the first informant

proceeded to the aforementioned residence in the evening hours of April 1, 1980—the residence being the property 1857 Old York Road—and it was at this time that he did observe George Land in possession of a quantity of Methamphetamine while inside the premises or residence, 1857 Old York Road.

It seems to me that that evidence is fresh. A search was conducted the following evening apparently about 6:30 p.m. in the evening, and the Affidavit sets forth the basis for the informants' information and establishes adequately, I believe, his reliability in that he personally observed what he reports as Methamphetamine. And as the District Attorney points out, at this point the Affidavit has to be viewed in the light of the probability. It's a test of probable cause, not proof beyond a reasonable doubt.

So, obviously, when a witness says he saw Methamphetamine, that cannot be established as an absolute fact unless and until it's tested by some laboratory, but the informant's prior contact the drug scene satisfied me that there was a sufficient basis for him to identify the substance as Methamphetamine and establishes it as that as a matter of probability.

So for those reasons I think the Affidavit is sufficient. The court certainly recognizes that the information initially received on December 21, 1979, for purposes of the search in April would undoubtedly be stale and would not in and of itself, be sufficient to establish anything. Likewise, with regard to the report by Detective Kuter, since that depended on numerous sources, not further identified and certainly whose reliability is not further established. And informant B, too, identified here in this hearing as the second informant, likewise did not seem to me to add very much to this process in

that—although, Mr. Zdunowski reports in his Affidavit that on April 1, 1980, this affiant received information from another informant who stated that on March 30, 1980, George Land was in possession of a quantity of Methamphetamine. The court recognizes there is no basis for any determination factually to be made as to how informant B, arrived at that information.

We're not told anything other than a conclusion that Land was in possession of it without establishing the reliability, and while he may be a credible person otherwise, I think that prong of the Aguilar test is not made.

But the significant informant and the significant facts set forth in the affidavit seem to me relate to the first informant, his reliability, his credibility, which I think has been established adequately to warrant and justify the issuance of the search warrant, so the motion to suppress evidence is refused and denied."

The information furnished to the issuing authority in the affidavit for search warrant was adequate to satisfy the now familiar two-pronged test of Aguilar v. Texas, 378 U.S. 108 (1964); and Spinelli v. United States, 393 U.S. 410 (1969). The Aguilar-Spinelli test requires that if a search warrant is based upon information received from an informant, the issuing authority must be able to determine from the content of the affidavit itself the following:

(1) That there is a factual basis to support the conclusion that the informant is reliable and credible. This has been referred to as the "veracity" prong. This requirement may be satisfied in a number of ways. Very often, as here, it is satisfied when it is shown that in the past, the informant has

given reliable information which resulted in convictions: Commonwealth v. Benjamin, 260 Pa. Superior Ct. 1, 393 A. 2d 982 (1978).

(2) That there is a factual basis to support the conclusion that the information furnished is probably accurate. This has been referred to as the "knowledge" prong. This requirement is typically satisfied when the affidavit spells out precisely how the informant came by his information or where it is described in such sufficient detail so as to support a conclusion that the informant knows whereof he speaks. Here, the affidavit plainly recites that the informant's information came as a result of having seen defendant in possession of a quantity of Methamphetamine inside his residence at 1857 Old York Road in the evening hours of April 1, 1980. The search was conducted less than 24 hours later. The "knowledge" prong of the test was thus satisfied: Com. v. Prokopchak, 279 Pa. Superior Ct. 284, 420 A. 2d 1335 (1980); Com. v. Passarelli, 274 Pa. Superior Ct. 436, 418 A. 2d 485 (1980).

Appellant's contention that the affidavit does not furnish information to support a conclusion that the informant knew the substance he saw was Methamphetamine is without merit: Com. v. Gelfont, 264 Pa. Superior Ct. 96, 399 A. 2d 414 (1979).

## III. SEIZURE OF ITEMS NOT SPECIFICALLY ENUMERATED IN THE SEARCH WARRANT

Appellant contends that even assuming the validity of the search warrant, that the seizure of items not specifically enumerated in the search warrant was improper and that such items should have been suppressed. He refers specifically to the laboratory equipment and the telephone bill, Western Union Mailgram and mail from Edmund Sci-

entific Company, addressed to defendant at 1858 Old York Road. We disagree. As to the laboratory equipment, clearly they constituted, "assorted narcotics paraphernalia" which is included in the recitation of items to be searched for and seized in the search warrant. Such items being the obvious accoutrements of the clandestine Methamphetamine manufacturing laboratory were properly seized: Com. v. Harris, 263 Pa. Superior Ct. 110, 397 A. 2d 424 (1979).

The telephone bill, Western Union Mailgram, and the literature from Edmunds Scientific Company, were properly seized notwithstanding the fact that they were not specifically enumerated in the search warrant. "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have the view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236 (1969); Com. v. Rota, 222 Pa. Superior Ct. 163, 167-168, 292 A. 2d 496, 498-499 (1972). Appellant contends that these items being neither fruits of crime, instrumentalities of crime, nor contraband, were not subject to seizure. Again, we disagree. While it is true that the police may not, on the basis of the plain view doctrine, randomly and indiscriminately seize every item they come upon in the course of executing a valid search warrant, the particular circumstances presented in this case rendered the seizure of the items in question eminently reasonable. It must be remembered that no person was present on the premises at the time of the search. Furthermore, although the premises were leased to defendant, the first floor was used entirely as a storage area for tools and electrical equipment. The second floor area where the items were found likewise did not appear to be occupied

as a residence. The officers conducting the search could well have concluded, as subsequent events at the trial bore out, that defendant would disclaim any connection with or knowledge of the items in question. The seizure of the items, therefore, particularly the mailgram addressed to defendant at the premises and dated only ten days earlier, could and did establish an important link between defendant and the contraband seized and the criminal activity on-going in the premises. In Warden v. Hayden, 387 U.S. 294 (1967), the United States Supreme Court pointed out that nothing in the language of the Fourth Amendment supports the distinction between "mere evidence" and instrumentalities of crime, fruits of crime, or contraband. There must, of course, be a nexus between the items seized and criminal behavior. Thus, in the case of mere evidence, the circumstances must be examined to determine whether there is a basis to believe that the evidence seized will aid in the apprehension or conviction of a guilty person: Com. v. Davis, 466 Pa. 102, 351 A. 2d 642 (1976). Thus viewed, the seizure of the items in question was lawful and they were properly received into evidence.

## IV. SUFFICIENCY OF THE EVIDENCE

It is well settled that the test for examining the sufficiency of the evidence is "whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the factfinder could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that defendant is guilty of the crime or crimes of which he has been convicted." Com. v. Rogers, 472 Pa. 435, 372 A. 2d 771 at 774 (1977).

Appellant contends that the evidence was insuf-

ficient to establish his possession or constructive possession of any of the contraband or laboratory equipment seized. As we have noted, neither defendant nor anyone else was present on the premises at the time the search warrant was executed and the items seized. Since the contraband was not found on the person of defendant, the evidence must be sufficient to prove defendant's constructive possession beyond a reasonable doubt: Com. v. Hoetzel, 284 Pa. Superior Ct. 623, 426 A. 2d 669 (1981). Constructive possession requires not only the ability to control a substance but the intent to do so: Com. v. Stephens, 231 Pa. Superior Ct. 481, 331 A. 2d 719 (1974).

The evidence was sufficient to establish defendant's constructive possession of the items in question. Defendant had leased the premises since 1975. No one else was present on the premises at the time of the search. While it is true that defendant testified that his girlfriend, one Joan Patrone, used the premises from November 1979 until August of 1980, and he attempted to cast responsibility for the items on her or her estranged husband, his testimony in this regard was unpersuasive and was rejected. Likewise, his explanation for his use of the chemicals in question in connection with his work as an electrician was rejected. It should be pointed out that defendant called as a witness, one Matthew J. Gross, who worked as defendant's assistant in his electrical business for the past six years. On cross-examination, Mr. Gross admitted that in that entire time he never had occasion to use the chemicals in question in the course of his work with defendant as an electrician. In short, this is not a case where defendant's property interest in the dwelling where the controlled substances were found loses its persuasiveness because persons

other than the accused had equal access to the place where the contraband is found: Com. v. Hoetzel, supra. Appellants's claim in this regard rested upon his own testimony which we were free to reject.

In reviewing a criminal conviction, an appellate court will not weigh the evidence and thereby substitute its judgment for that of the factfinder, particularly, when to do so would require an assessment of the credibility of the testimony: Com. v. Woodhouse, 401 Pa. 242, 164 A. 2d 98 (1960); Com. v. Sullivan, 436 Pa. 450, 263 A. 2d 734 (1970); Com. v. Johnson, 263 Pa. Superior Ct. 512, 398 A. 2d 694 (1979). The evidence in this case fully warranted the court's conclusion that defendant had exclusive control of the contents of the residence and therefore had the requisite knowledge and intent, to sustain these convictions. See, Com. v. Stamps, 493 Pa. Superior Ct. 530, 427 A. 2d 141 (1981).

Appellant's contention that the presence of methamphetamine hydrochloride residue on a number of the items seized was insufficient under the act because the drug was not present "in sufficient quantities that could have an effect on the central nervous system" is plainly incorrect. The act was amended by the Act of November 26, 1978, P.L. 1392, Number 328, §, 35 Pa.C.S.A. §780-104(2)(iii). Specifically, the former language of the statute which read, "which contains any quantity of the following substances, having a potential for abuse associated with the stimulant effect on the central nervous system" has been deleted. The statute now merely refers to *any quantity* of the following substances: . . . (4) Methamphetamine, including its salts, isomers and salts of isomers." Since the amendment was in effect at the time of

defendant's arrest, it fully applies to him and his reliance on the earlier, now deleted language, is misplaced. See, Com. v. Hoetzel, 284 Pa. Superior Ct. 623, 426 A. 2d 669 (1981).

## V. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Following trial and the filing of post-verdict motions by trial counsel, defendant engaged new counsel (present counsel) who was permitted to file supplemental motions for new trial and in arrest of judgment. It was in these motions that the issue of the ineffectiveness of trial counsel was raised before this court and thus properly preserved for appellate review: Com. v. Hubbard, 472 Pa. 259, 372 A. 2d 687 (1977). The claim of ineffectiveness may be broken down as follows:

(a) That by failing to file the notes of testimony of the preliminary hearing, defense counsel was precluded from arguing his motion to quash the informations and from effectively cross-examining the Commonwealth's witnesses. This contention is without merit. The bills of information were worded in the precise language of the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa.C.S.A. § 113(a)(16)(30). As such, they were sufficient as a matter of law: Com. v. Bradshaw, 238 Pa. Superior Ct. 22, 364 A. 2d 702 (1975); Com. v. Rolinski, 267 Pa. Superior Ct. 199, 406 A. 2d 763 (1979). Further, the record fails to reveal any instance where trial counsel's cross-examination was limited by the court because he had failed to file the notes of testimony of the preliminary hearing. Finally, if it is appellant's contention that the Commonwealth had not presented a prima facie case at the preliminary hearing, such is not a basis

to quash the informations but rather, if the evidence was insufficient at trial, the appropriate relief would be the granting of defendant's motion for a demurrer. See, Com. v. Krall, 452 Pa. 215, 304 A. 2d 488 (1973).

(b) Appellant next contends that his trial counsel was ineffective in failing to file a timely application for bill of particulars. In this contention, counsel is plainly incorrect. A request for bill of particulars was filed, however, it was refused because it was in the nature of a request for discovery rather than a bill of particulars. Appellant's claim that his trial counsel was hindered by having the information sought furnished late is also belied by the record. It should be noted that trial counsel represented defendant from the time of his arrest and did so at the preliminary hearing. Further, the criminal complaint against defendant was filed on April 30, 1980, and the probable cause statement is virtually a summary of all of the Commonwealth's evidence at trial. Additionally, at the very outset of trial, the record reflects the following colloquy:

"THE COURT: I don't see any Motion in the file requesting discovery apart from the Bill of Particulars, which is not the appropriate vehicle for obtaining Discovery. In any event, to avoid delays during the course of the trial, Mr. Selig, (Assistant District Attorney) will you cooperate with Mr. Briskin (Defense Counsel) and give him the information the Discovery Rules entitle him to?

MR. SELIG: Certainly, Your Honor.

THE COURT: So there are no delays in the course of the trial. I think that's in the interest of all concerned. Can we leave it at that?

MR. SELIG: I'll provide Mr. Briskin with anything that's in my file.

THE COURT: All right. Then the request for Bill of Particulars is refused with that understanding."

In this retrospective assessment of defense counsel's preparedness for trial, in view of all of the above, there is no basis for a conclusion that trial counsel was ineffective or that defendant was in any way prejudiced. Further, there is no basis for a finding of ineffectiveness because defense counsel failed to file a proper request for bill or particulars. See, United States v. Waite, 450 F.Supp. 1165 (W.D.) Pa. (1978); Com. v. Bartman, 240 Pa. Superior Ct. 495, 367 A. 2d 1121 (1976).

(c) Appellant's claim that an application to quash the informations on the grounds that they were vague and indefinite should have been filed and the failure to do so constitutes ineffectiveness is without merit. As we have noted, the informations here were cast in the precise language of the statute and were hence sufficient: Com. v. Bradshaw, supra, Com. v. Rolinski, supra. Clearly, where a claim is not meritorious, it is not ineffective assistance of counsel to fail to pursue it: Com. v. Musi, 486 Pa. 102, 404 A. 2d 378 (1979).

Finally, appellant contends that his counsel was ineffective in permitting him to proceed to trial before the undersigned without a jury inasmuch as I heard and ruled upon the pretrial suppression motions. First, we point out that the record reflects that after the court had ruled on the suppression motion and defense counsel indicated that a waiver of jury trial was contemplated, the court advised defendant and his counsel that "you would have the right if you elected to go non-jury, it seems to me, to do so before another judge inasmuch as I heard the Suppression Motion." Notwithstanding this, defendant waived his right to a jury trial and elected

to be tried before the undersigned. He may not now complain of his decision: Com. v. Wojciechowski, 285 Pa. Superior Ct. 1, 426 A. 2d 674 (1981). Nor may defendant now raise the issue as a claim of ineffective assistance of counsel. As the court pointed out in Wojciechowski, 426 A. 2d at page 675: "The Supreme Court of Pennsylvania has held that there are many instances such as the instant case, where all parties are perfectly agreeable to the same judge presiding at both Suppression Hearing and Trial even where the trial is non-jury. Commonwealth v. Goodman, 454 Pa. 358, 311 A. 2d 652 (1973)." See too, Com. v. Paquette, 451 Pa. 250, 301 A. 2d 837 (1973).

The judgment of sentence should be affirmed.