478 A.2d 447

**COMMONWEALTH of Pennsylvania**

**v.**

**William McELHENNY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1983.

Filed May 25, 1984.

Reargument Denied Aug. 7, 1984.

See also 273 Pa.Super. 234, 417 A.2d 254.

Gilbert B. Abramson, Philadelphia, for appellant.

Ronald Eisenberg, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, BROSKY and POPOVICH, JJ.

BROSKY, Judge:

■ This appeal is taken from judgment of sentence imposed for conviction of third degree murder. The only issue raised which will be addressed here is whether the admission at trial of evidence which was inadmissible at the time the crime was committed violates the *ex post facto* clauses of the Constitutions of the Commonwealth and of these United States.[1] We find that there is no such violation and, accordingly, affirm.[2]

\* \* \*

The evidence in question here is a tape recording of a telephone call made by appellant to the police emergency number. Appellant made some incriminating statements during this call which were automatically recorded. At the time the recording was made it was legally made but could not be used as evidence in court. The then effective statute, 18 Pa.C.S. § 5702(c)(1)(ii), required that appellant give his written consent to the tape coming into evidence. Be-

1. Five other issues are also raised by appellant. They have been properly disposed of by the trial court on well-settled principles of law, and do not merit publication. The *ex post facto* issue, while also correctly treated by the trial court, is not covered in the published opinions of this Commonwealth and consequently appears here.

2. Appellant raises a related issue within his *ex post facto* argument regarding the competency of the suppression court to rule upon the suppression issue on the basis of the new statute and regarding the alleged waiver by the Commonwealth of this ground. We do not treat these arguments on their merits because they are themselves waived through their absence in the post-verdict motions. *Commonwealth v. Blair*, 460 Pa. 31 at 33, n. 1, 331 A.2d 213 at 214, n. 1 (1975).

fore this case came to trial that statute was repealed and a new one took its place under which this evidence was admissible.[3] The tape recording was then admitted into evidence at trial.

\* \* \*

Appellant contends that the admission at trial of this evidence which was inadmissible at the time the crime was committed violates the *ex post facto* clauses of the Federal and State constitutions.

The United States Constitution provides that "No state shall ... pass any ... ex post facto law ..." U.S. Const. Article 1, § 10. The basic definition of the *ex post facto* clause was laid down in 1798 in the landmark case of *Calder v. Bull*, 3 Dall. (U.S.) 386 at 390, 1 L.Ed. 648 at 650 (1798). The parameters set in *Calder* have been followed and amplified in the case law of the succeeding 18 decades. One portion of *Calder* is relevant to the issue before this Court.

> I will state what laws I consider ex post facto laws, within the words and the intent of the prohibition. ... 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Id.*

Under this standard the *ex post facto* clause was not violated *sub judice.* The law in question here did, indeed, alter the legal rules of evidence so that different testimony was admissible. A cursory reading of the above quotation might, on that basis, lead to the conclusion that appellant here should prevail. But a more careful reading results in the opposite holding. The law before us did not fit the rest of the quoted requirement. It did not alter the evidence necessary to *convict* the offender. That is, it did not

---

3. Under the new law, 18 P.C.S. §§ 5704(3), 5717(b), recordings of telephone calls to police emergency communications systems are admissible.

change the legal definition of the crime; it did not change the prohibited behavior or what the state had to show to prove the commission of the crime. That must be the focus of our enquiry and it did not occur here.

■ It is understandable that a mere alteration in the admissibility of a piece of evidence does not violate the *ex post facto* clause when one realizes that "[i]t attempts to preserve for persons the right to fair warning that their conduct will give rise to criminal penalties." *Commonwealth v. Hoetzel*, 284 Pa.Super. 623 at 630, 426 A.2d 669 at 672. The fact that the tape recording later became admissible in no way deprived appellant of notice that killing his wife would "give rise to criminal penalties." In *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), the United States Supreme Court addressed a situation with significant similarities to the one before us. In *Hopt* a category of witness—a convicted felon—who was incompetent to testify at the time the crime was committed, became competent by the time of trial. The issue treated in *Hopt* was whether the changed status of a witness violated the *ex post facto* clause. The first Justice Harlan, writing for the Court, held that there was no violation.

> Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not *ex post facto* in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done, nor aggravate any crime theretofore committed, nor provide a greater punishment therefor than was prescribed at the time of its commission, nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed. The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected

by the subsequent statute. Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offense was committed, might, in respect of that offense, be obnoxious to the constitutional inhibition upon *ex post facto* laws. But alterations which do not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt, but—essential to conviction—only removes existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the state, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offense charged.

*Hopt v. Utah, supra* at 589–90, 4 S.Ct. at 210, 28 L.Ed. at 268-9.

The issue in *Hopt* is, admittedly, different from the one before us; we are concerned with previously inadmissible evidence and *Hopt* dealt with a previously incompetent witness. Nonetheless, the rationale given in *Hopt* sheds light, a century later, on our issue. Quite obviously, it does so to appellant's detriment.

Fourteen years later Justice Harlan again authored an opinion of interest here. That case, *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898), is on point with the case before us. *Thompson* involved evidence which was not admissible at the time the crime was committed nor at petitioner's first trial. A statutory change subsequently made the evidence—a handwriting comparison—admissible. It was used in the second trial and an *ex post facto* violation was alleged. That claim was rejected in language which echoed that in *Hopt*.

... we adjudge that the statute of Missouri relating to the comparison of writings, is not ex post facto when applied to prosecutions for crimes committed prior to its passage ... we cannot perceive any ground upon which to hold a statute to be ex post facto which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. The Missouri statute, when applied to this case, did not enlarge the punishment to which the accused was liable when his crime was committed, nor make any act involved in his offense criminal that was not criminal at the time he committed the murder of which he was found guilty. It did not change the quality or degree of his offense. Nor can the new rule introduced by it be characterized as unreasonable; certainly not so unreasonable as materially to affect the substantial rights of one put on trial for crime. The statute did not require "less proof, in amount or degree," than was required at the time of the commission of the crime charged upon him. It left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible, and did not disturb the fundamental rule that the state, as a condition of its right to take the life of an accused, must overcome the presumption of his innocence, and establish his guilt beyond a reasonable doubt. Whether he wrote the prescription for strychnine, or the threatening letter to the church organist, was left for the jury; and the duty of the jury, in that particular, was the same after as before the passage of the statute. The statute did nothing more than remove an obstacle arising out of a rule of evidence that withdrew from the consideration of the jury testimony which, in the opinion of the legislature, tended to elucidate the ultimate, essential fact to be established, namely, the guilt of the accused. ... We cannot adjudge that the accused had any vested right in the rule of evidence which obtained prior to the passage of the

Missouri statute, nor that the rule established by that statute entrenched upon any of the essential rights belonging to one put on trial for a public offense.

*Thompson v. Missouri, supra* at 386–88, 18 S.Ct. at 924–5, 43 L.Ed. at 207–8.

 The rule of *Thompson* disposes of appellant's Federal constitutional claim against him.

\* \* \*

The Pennsylvania Constitution similarly mandates that "No ex post facto law ... shall be passed." Pa. Const. Article 1, § 17. The provision of the Pennsylvania Constitution can, of course, be interpreted to provide a broader protection than a similar provision in the Federal Constitution. We do not choose to do so here for two reasons.

First, the courts of this Commonwealth have, generally, interpreted the Pennsylvania clause coterminously with the Federal clause. See *Myers v. Lohr*, 72 Pa.Super. 472 at 474 (1919); *Commonwealth v. Hoetzel, supra* 284 Pa.Super. at 630, 426 A.2d at 672 (1981).

 Second, and more importantly, we find the interpretations of the Federal provision in this context consonant with our concept of justice. Those interpretations, detailed above, fully protect appellant from the mischiefs which the Pennsylvania provision was designed to prevent. Consequently, the disposition of appellant's claim under the U.S. Constitution applies equally to his claim under the Pennsylvania Constitution.[4]

\* \* \*

Judgment of sentence affirmed.

POPOVICH, J., concurs in the result.

4. As has been seen, while there is precedent on the point in question vis-a-vis the U.S. Constitution, this particular issue has not been the subject of treatment under the Constitution of this Commonwealth. It is that gap which we fill here.