J-S30021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAKIRA SHOWNTA STATEN | : | |
| | : | |
| Appellant | : | No. 1326 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 5, 2023
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0000762-2021

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                   **FILED: OCTOBER 18, 2024**

Shakira Shownta Staten ("S. Staten") appeals from the judgment of sentence[1] following her jury convictions for one count each of aggravated assault, simple assault, conspiracy, and riot.[2]  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's 1925 opinion in the companion case of ***Commonwealth v.***

---

[*] Former Justice specially assigned to the Superior Court.

[1] S. Staten was tried with three co-defendants, her sister, LakettaL. Staten Staten ("L. Staten"), her brother, Malcolm Staten ("M. Staten"), and her friend, Angela Douglas ("Douglas").  The jury found all defendants guilty of the same offenses.  L. Staten's appeal is addressed by separate memorandum at Superior Court Docket No. 1309 MDA 2023.  This Court previously affirmed the judgments of sentence of M. Staten at No. 226 MDA 2023 and Douglas at No. 594 MDA 2023.

[2] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), 903, 5501(1).

**[L.] Staten**, 1309 MDA 2023[3] and our independent review of the certified

record.

> [In March], 2021, law enforcement officers responded to reports of a possible fight [("the incident")] that occurred in the area of East Washington Street in Chambersburg, Franklin County. As paramedics tended to Fawn Baer [("the victim")], she advised law enforcement that [L. Staten, S. Staten, Douglas, and M. Staten (collectively "co-defendants")], were responsible for the injuries she sustained.
>
> As background leading up to the [i]ncident, three men invaded [M. Staten's] home. The men kicked in [M. Staten's] front door and suddenly left. After leaving, [M. Staten] walked directly to [the victim's] house where he observed the men speaking with her. [M. Staten] recorded the men speaking to [the victim] through her window and sent the video to his cousin [Darius Spoonhour, ("Spoonhour")], sister [the record does not specify which sister], and [others]. [M. Staten] testified it was not his first thought to call law enforcement to report the break-in because he does not trust the police.
>
> The next morning . . ., [the victim] and her friend Asheyla Barbour [("Barbour")[4]] encountered [M. Staten] in front of his home where a verbal exchange took place. After the [exchange], [the victim] and Barbour left the area. [M. Staten] called [the victim] through Facebook and an argument ensued about the men who broke into [M. Staten's] home. [The victim] and [M. Staten] agreed to meet on Washington Street so [the victim] could explain the previous night's events.
>
> While en route to Washington Street, [L. Staten] contacted [M. Staten] and he informed her of his meeting with the victim. [L. Staten] expressed her belief that [M. Staten] was being set up and informed him she would be there "in case something happened," to which [M. Staten] responded[,] "Okay."

---

[3] For reasons discussed in greater detail below, the trial court did not author a 1925(a) opinion in this case, although it did address S. Staten's claims in its denial of her post-verdict motions.

[4] Barbour and Malcolm are the co-parents of a child.

[The victim] and Barbour testified to being followed [by Spoonhour and the co-defendants] and to attempts of co-defendants to box in their vehicle as they traveled to Washington Street. [S. Staten] also contacted Barbour [and the victim] through [M. Staten's as well as Douglas's] Facebook account[s] and threatened [the victim] and Barbour with violence. Barbour testified[,] "[T]hey were going to get us. They were going to fight us, beat us up."

Video of the [i]ncident was admitted at trial [("the video")[5] and shows [the victim's] vehicle[6] being boxed in by three vehicles occup[ied by] co-defendants along Washington Street. [Co-defendants] exited the vehicles and approached the passenger side of [the victim's] car, where she was seated as a passenger. Although the [v]ideo does not document every exchange between [the victim] and co-defendants, a commotion can be seen on the far side of [the victim's] car resulting in her body dropping to the ground. While the commotion was taking place, Paul Shives [("Shives")] approached the scene with a friend to make sure everyone was okay. [M. Staten] approached Shives and his friend and kept them from intervening in the [i]ncident. The co-defendants re-entered their vehicles and left the scene once sirens were heard approaching.

Trial Court 1925(a) Opinion in case 1309 MDA 2023, 11/7/23, at 1-4 (record citations and footnotes omitted; footnotes added).

Following a June 2022 trial, a jury convicted S. Staten of the above-cited offenses. The trial court sentenced S. Staten to an aggregate term of thirty-six to seventy-two months in prison. S. Staten filed post-sentence

---

[5] None of the trial exhibits, including the video, were forwarded to this Court. This Court has clearly stated that it is the appellant's responsibility to ensure that the certified record contains all documents necessary to ensure that this Court is able to review her claims. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*); Pa.R.A.P. 1926; Pa.R.A.P. 1931.

[6] Barbour was driving the victim's vehicle.

motions challenging the sufficiency and weight of the evidence, which the trial court denied. This timely appeal followed.

At the time of sentencing, S. Staten was pregnant. At her request, the trial court deferred her reporting date until after the birth of her child. S. Staten did not report to jail as required and removed her monitoring bracelet. The trial court issued a bench warrant, which was later discharged after S. Staten was located and arrested. Because S. Staten had absconded, the trial court did not order her to file a Rule 1925(b) statement and did not issue a Rule 1925(a) opinion.

S. Staten raises seven issues for our review:

I. Did the trial court err in finding sufficient evidence for conviction for . . . aggravated assault - attempts to cause [serious bodily injury ("SBI")] or causes injury with extreme indifference, when [the] Commonwealth . . . failed to prove beyond a reasonable doubt that [the] victim suffered [SBI,] or that [S. Staten] attempted to cause the victim [SBI]?

II. Did the trial court err in finding sufficient evidence for conviction for . . . conspiracy to commit aggravated assault, when the Commonwealth failed to prove beyond a reasonable doubt that [S. Staten] had an agreement with the other co-defendants to commit aggravated assault?

III. Did the trial court err in finding sufficient evidence for a conviction for . . . riot, when the Commonwealth failed to prove beyond a reasonable doubt that [S. Staten] acted in concert with two or more individuals with the intent to commit aggravated assault?

IV. Was the guilty verdict for . . . aggravated assault - attempts to cause SBI or causes injury with extreme indifference so contrary to the weight of the evidence that it shocks one's sense of justice and thereby necessitates a new trial?

- 4 -

V. Was the guilty verdict for . . . conspiracy to commit aggravated assault so contrary to the weight of the evidence that it shocks one's sense of justice and thereby necessitates a new trial?

VI. Was the guilty verdict for . . . riot so contrary to the weight of the evidence that it shocks one's sense of justice and thereby necessitates a new trial?

VII. Did the trial court err in allowing Dr. [Matthew] Maserati to testify when his testimony did not relate to the existence of a conspiracy and did not relate to whether there was an attempt to cause [SBI], and when the jury was not charged with finding whether or not [S. Staten] caused [SBI]?

S. Staten's Brief at 4-5 (capitalization and punctuation regularized, issues reordered).[7]

In her first three issues, S. Staten challenges the sufficiency of the evidence underlying her aggravated assault, conspiracy, and riot convictions. *See* S. Staten's Brief at 10-19.

Our standard of review is settled:

[w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[]finder to find every element of the crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of

_____

[7] S. Staten's argument is divided into two sections each with subsections and its headings do not match her statement of the questions involved. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Nonetheless, we will address her issues because this discrepancy does not hamper our review. *See Donahue v. Fed. Express Corp.*, 753 A.2d 238, 241 n.3 (Pa. Super. 2000).

the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[]finder.

***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (internal citations and quotation marks omitted).

A person commits aggravated assault if, *inter alia*, she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). We have explained the elements of aggravated assault as follows:

> "Serious bodily injury" has been defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. For aggravated assault purposes, an "attempt" is found where an "accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances.

***Commonwealth v. Fortune***, 68 A.3d 980, 984 (Pa. Super. 2013) (some internal citations and quotation marks omitted).

A person may be found guilty of conspiracy if "with the intent of promoting or facilitating its commission [s]he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or

commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a).

To prove the existence of a criminal conspiracy, the Commonwealth must demonstrate the defendant: "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Chambers*, 188 A.3d 400, 410 (Pa. 2018) (citations omitted). "Once the conspiracy is established beyond a reasonable doubt, a conspirator can be convicted of both the conspiracy and the substantive offense that served as the illicit objective of the conspiracy." *Id*. at 410 (citations omitted). Moreover, the essence of criminal conspiracy is the agreement between co-conspirators, which can be proved directly or, more often, circumstantially, but is not established by mere association or presence at the crime scene. We have explained:

> [M]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Golphin*, 161 A.3d 1009, 1018–19 (Pa. Super. 2017) (citations omitted).

A person is guilty of riot if " [s]he participates with two or more others in a course of disorderly conduct . . . with intent to commit or facilitate the commission of a felony or misdemeanor[.]" 18 Pa.C.S.A. § 5501(1). As it pertains to riot, "the proof of group action contemplated is not the common intent to commit a felony or misdemeanor, but rather the actor's participation with two or more others in a course of disorderly conduct."[8] *Commonwealth v. Johnson*, 612 A.2d 1382, 1384 (Pa. Super. 1992) (footnote and emphasis omitted). "It has long been held that group action is the essence of riot." *Id*. at 1384 n.1.

Concerning her aggravated assault conviction, S. Staten argues because the victim did not suffer SBI, the Commonwealth was required to prove she intended her actions to result in SBI or death, and it failed to do so.[9] *See* S.

---

[8] Disorderly conduct is defined as, "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [s]he: (1) engages in fighting or threatening, or in violent or tumultuous behavior[.]" 18 Pa.C.S.A. § 5503(a)(1).

[9] S. Staten relies on *Commonwealth v. Robinson*, 817 A.2d 1153 (Pa. Super. 2003), in which the Court overturned the aggravated assault conviction of a conspirator to a robbery during which one of the robbers struggled with the victim to take her backpack and hit her in the back with the butt of a handgun. *See* at 1157. In overturning Robinson's aggravated assault conviction, the Court concluded the conspirators' intent was robbery, not aggravated assault, especially where no one fired the gun at the victim. *See id*. at 1158-61.

Staten's Brief at 11-15. S. Staten maintains the testimony of the victim and Barbour was inconsistent. **See id**. at 15. S. Staten notes the assault only lasted for a few seconds and she did not use a weapon even though there were "indications" one was available. **See id**. at 16.

Regarding conspiracy, S. Staten claims there was "little evidence" of an agreement among her and her co-defendants. **Id**. at 17. She notes the Commonwealth did not produce cell phone records, text messages, or any other type of electronic messages evidencing a conspiratorial agreement. **See id**. S. Staten maintains while the Commonwealth proved a relationship between the co-defendants and perhaps proved an agreement to "show up at Washington Street," it did not prove they intended to assault the victim. **Id**. at 17-18.

Lastly, with respect to riot,[10] S. Staten argues "there was no evidence that [S. Staten] and co-defendants intentionally worked together to cause public inconvenience, annoyance, or alarm.'" **Id**. at 18. Rather, S. Staten maintains it was Barbour who caused a riot by backing into L. Staten's car. **See id**. at 18-19.

The trial court found the evidence sufficient to prove S. Staten's guilt. It stated the victim:

> was pulled from the car, thrown to the ground, and blows were inflicted on her neck and head with no other goal than the blows

---

[10] S. Staten was not charged with, nor convicted of, disorderly conduct.

- 9 -

themselves. Co-defendants landed far more than a single blow to [the victim's] back; several blows struck her neck and head. By [S. Staten's] own assertion, the assault on [the victim] lasted between seven and eleven seconds. The assault on [the victim] only ended after co-defendants heard sirens approaching.

* * * * *

[Barbour] testified that [Douglas] and "the Staten sisters" were standing over [the victim] while she was on the ground and were hitting her. [Barbour] testified she saw [L. Staten] physically strike [the victim]. [The victim] testified [S. Staten] and [L. Staten] pulled her from her car and onto the ground.

* * * * *

In viewing the evidence in a light most favorable to the Commonwealth, [the trial court finds] sufficient evidence was presented for the jury to find that [S. Staten] intended to cause serious bodily injury to [the victim] and took a substantial step towards doing so.

Trial Court Opinion Denying S. Staten's Post-Sentence Motions, 8/15/23, at 8-9 (record citations omitted).

The court rejected S. Staten's attempt to analogize this case to *Robinson*, noting that this case did not involve a robbery, the conspirators' clear, single goal was to inflict blows on the victim, and the attackers' actions did not undermine their attempt to cause serious bodily injury: they only ceased their attack when they heard police approaching.

The trial court also rejected S. Staten's assertion that the evidence was insufficient to sustain her conviction for conspiracy. It explained:

[the victim] testified that she had not had any previous disagreements with [S. Staten, L. Staten, or Douglas]. [L. Staten] contacted [M. Staten] and told him she wanted to go with him to meet [the victim] "in case something happens." [M. Staten]

- 10 -

agreed to her coming to Washington Street. While [S. Staten] makes the argument that [the victim] had no prior relationship with [her, L. Staten, or Douglas], we find that this evidence further [shows] the sole motivation the three co-defendants had in participating in this crime was through their relationship to [M. Staten]. [The victim] confirmed she ha[d] no active disagreements with [S. Staten, L. Staten, or Douglas] at the time of this incident.

The Commonwealth presented evidence that [S. Staten] was present [at the incident] through the testimony of [the victim], Barbour, and Shives.[11] Additionally, Barbour [and the victim] testified [S. Staten] made [] threatening call[s] to [them] using [M. Staten and Douglas's] Facebook account[s]. . . .

[S. Staten's] vehicle [she and L. Staten were driving separate cars] arrived on Washington Street [and boxed in the victim's vehicle,] and she promptly exited her vehicle once [the victim's] vehicle struck [L. Staten's] vehicle [while trying to escape]. [L. Staten] approached [the victim's] car and began striking [the victim's] vehicle. [S. Staten] joined in on striking [the victim's] vehicle, punching the window until "it spider cracked [the] window." [L. Staten] then began striking [the victim] once she was pulled from her vehicle, along with [S. Staten] and [Douglas]. Taken in a light most favorable to the Commonwealth, it is reasonable for a jury to infer that [S. Staten] was present on Washington Street through her connection to co-defendants and conclude that [S. Staten's] participation in an assault on [the victim with the other participants] is supported by the record.

*Id*. at 10-11 (record citations omitted, footnote added).

The trial court also explained S. Staten's challenge to her conviction for

riot is premised on her claim the evidence was insufficient to sustain her

conviction for conspiracy. *See id*. at 12. Thus, it found the evidence sufficient

---

[11] As noted above, Shives was a witness who attempted to intervene in the incident. He testified on behalf of the Commonwealth.

to sustain her conspiracy conviction, her challenge to the riot conviction lacked merit. *See id*.

The record supports the trial court's analysis. S. Staten views the evidence in the light most favorable to herself, not the Commonwealth, and attempts to isolate the assault from the events which occurred the evening before and that morning. *See* S. Staten's Brief at 11-19. A reviewing court "evaluate[s] the entire trial record and all evidence actually received, in the aggregate and not as fragments isolated from the totality of the evidence." *Commonwealth v. Nixon*, 801 A.2d 1241, 1243 (Pa. Super. 2002). Viewing all the evidence in the light most favorable to the Commonwealth as verdict winner, *see Miller*, 172 A.3d at 640, the evidence was sufficient to sustain S. Staten's convictions. *See* 18 Pa.C.S.A. §§ 2702(a)(1), 903(1), and 5501(1). S. Staten's first three issues do not merit relief.[12]

In her fourth through sixth issues, S. Staten challenges the weight of the evidence underlying her convictions for aggravated assault, conspiracy, and riot. *See* S. Staten's Brief at 19-21.

Our standard of review for a weight of the evidence claim is well-settled:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support.

---

[12] S. Staten's challenge to the alleged inconsistencies in the testimony of the victim and Barbour goes to the weight, not sufficiency, of the evidence. *See Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (review of sufficiency of evidence does not include assessment of credibility of testimony; such claim goes to weight of evidence).

Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

\* \* \* \* \*

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

\* \* \* \* \*

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Mucci*, 143 A.3d 399, 410-11 (Pa. Super. 2016) (quotation marks and citations omitted). A weight of the evidence challenge only has merit where the evidence is so tenuous, vague, and uncertain the verdict shocks the conscience of the trial court. *See Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003).

S. Staten claims that neither the victim nor Barbour was a credible witness because there were discrepancies between their testimony. *See* S. Staten's Brief at 20. S. Staten also contended the women did not sufficiently explain their actions over the course of the day of the incident. *See id*.

The trial court disagreed.

- 13 -

[S. Staten's] challenge to the weight of the evidence as to her convictions for aggravated assault, riot, and conspiracy to commit aggravated assault is based on the credibility of the Commonwealth's witnesses; specifically [the victim] and [Barbour]. [S. Staten] primarily points out several events that Commonwealth's witnesses are unable to explain[.] . . . However, [S. Staten] does not state how a difference in the testimony of [the victim] and [Barbour] applies to the elements of the crimes. While [M. Staten's] testimony conflicted with testimony from the Commonwealth's witnesses, [the trial court] cannot sit as an additional juror and impose [its] assessment of credibility or whether [it] agree[s] with the verdict.

[S. Staten] next argues that there was no evidence presented to prove communications between co-defendants before they appeared on Washington Street. [The trial court] find[s] this misstates the record. [M. Staten] testified that he informed [L. Staten] that he was going to Washington Street to meet with [the victim] and she informed [M. Staten] that she would be going with him "just in case." [M. Staten] responded[,] "Okay." Sometime in between the confrontation in front of [M. Staten's] home and the incident on Washington Street, [S. Staten] contacted [Barbour and the victim] using [both M. Staten's and Douglas's] Facebook account[s] and threatened her and [the victim]. As criminal conspiracy "may be proven inferentially by showing the relation, conduct, or circumstances of the parties, and any overt acts of the alleged co-conspirators," it is reasonable for the jury to find that the relationship between co-defendants, the communication between [M. Staten and L. Staten] and their concerted efforts on Washington Street showed a plan to assault [the victim].

While [the trial court] agree[s] there was some conflicting evidence presented at trial[,] [it] cannot sit as an additional juror. In reviewing the facts, as the jury found them, [the court] find[s] no particular facts so clearly of greater weight that in ignoring them [the court] den[ies] justice to [S. Staten]; furthermore, [the court's conscience was] not shocked by the verdicts of guilt.

Trial Court Opinion Denying S. Staten's Post-Sentence Motions, 8/15/23, at

14-16 (citations omitted, capitalization omitted).

We discern no abuse of discretion by the trial court in reaching its determination that the verdict did not shock its conscience. The Commonwealth presented evidence that S. Staten conspired with the co-defendants to assault the victim, assaulted her, and committed riot. That the jury, sitting as finder of fact, chose to believe the testimony provided by the victim and the Commonwealth's witnesses and not to credit S. Staten's theory of the case was entirely within its province. S. Staten essentially requests this Court re-weigh the evidence and assess the credibility of the witnesses presented at trial. This we cannot do, as it is a task that is beyond our scope of review. The jury, as finder of fact, had the duty to determine the credibility of the witnesses and evidence presented at trial. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact"). Although S. Staten challenged the victim's and Barbour's testimony regarding the incident, she did not so undermine the Commonwealth's evidence as to render it so tenuous, vague, and uncertain as to shock the trial court's conscience. Accordingly, we decline to disturb the trial court's rejection of S. Staten's challenge to the weight of the evidence.

In her seventh and final claim, S. Staten challenges the trial court's decision to admit the testimony of Dr. Maserati, who treated the victim following the incident. *See* S. Staten 's Brief at 21-22.

> Our standard of review regarding the admissibility of evidence is an abuse of discretion. The admissibility of evidence is a matter

addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

*Collins*, 70 A.3d at 1251–52 (citations omitted).

S. Staten argues the trial court abused its discretion because Dr. Maserati's post-incident treatment of the victim constituted improper expert testimony from a fact witness, was irrelevant to the charges, and was unduly prejudicial. **See** S. Staten's Brief, at 21-22. S. Staten did not object to any particular portion of Dr. Maserati's testimony, instead complaining he was an improper witness and should not have been allowed to testify. **See id**.; **see also** N.T., 6/8/22, at 98-100.

The trial court did not address this issue in the instant matter, because S. Staten did not raise it in her post-trial motions and the trial court did not require her to file a Pa.R.A.P. 1925(b) statement. However, in the companion case involving L. Staten, 1309 MDA 2023, it found the defendants waived this claim because they did not object to Dr. Maserati's testimony in a timely fashion. **See** Trial Court 1925(a) Opinion in case 1309 MDA 2023, 11/7/23, at 6-12.

It is settled law that failure to make a timely, contemporaneous objection waives the claim on appeal. **See Commonwealth v. Radecki**, 180 A.3d 441, 465 (Pa. Super. 2018) (holding Radecki waived his objection to a

witness's testimony when he did not object until after the witness finished the portion of the testimony he later assigned as error). *See id*.

Here, as the trial court explained in the companion case, the parties were aware prior to trial that the Commonwealth was planning on calling Dr. Maserati and had received several hundred pages of medical records relating to his testimony. *See* Trial Court 1925(a) Opinion in case 1309 MDA 2023, 11/7/23, at 8. Despite this, none of the parties filed a motion *in limine* to preclude his testimony. *See id*.

Dr. Maserati was called as a witness on the afternoon of the third day of trial. *See* N.T., 6/8/23, at 79. After the testimony of the first witness that day, a lengthy discussion ensued between all counsel and the trial court regarding scheduling issues. *See id*. at 35-53. During that discussion, the fact that Dr. Maserati would be testifying that afternoon was mentioned repeatedly; S. Staten asserted no objection to his testimony. *See id*. Following that conference and a *voir dire* of the jury regarding scheduling problems, another witness briefly testified. *See id*. at 55-68. A second conference between the trial court and counsel regarding scheduling ensued. *See id*. at 68-76. The Commonwealth again mentioned Dr. Maserati would be testifying and again, S. Staten raised no objection. *See id*. There was another break after the conference.

When the afternoon session began, the Commonwealth moved to admit the victim's medical records concerning her treatment with Dr. Maserati; none

of the co-defendants objected to its admission. *See id*. at 78-79. Dr. Maserati then began to testify. He testified to his credentials, his treatment of the victim, including her visits with him, the tests he ordered, and the surgery he performed on the victim. *See id*. at 79-95. It was only at that point that counsel for M. Staten, joined by counsel for the other co-defendants raised an objection. *See id*. at 95.

Thus, as the above indicates, S. Staten had ample opportunity to timely object to Dr. Maserati's testimony and did not do so. Accordingly, she waived this issue on appeal. *See Radecki*, 180 A.3d at 455. S. Staten's seventh issue does not merit relief.

For the reasons discussed above, S. Staten's issues are either waived or meritless. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/18/2024